# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| A.F., | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Case No. 2:23-cv-01241** |
| **v.** | ) |
| | ) **Judge Edmund A. Sargus** |
| **ASSOCIATION OF AMERICAN** | ) |
| **MEDICAL COLLEGES,** | ) **Magistrate Judge Elizabeth Preston** |
| | ) **Deavers** |
| **Defendant.** | ) |
| | ) |

## DECLARATION OF KATHRYN BUGBEE

I, Kathryn Bugbee, declare as follows:

1.      I am over eighteen (18) years of age and, unless indicated otherwise, I have personal knowledge of the facts stated below based on my employment at the Association of American Medical Colleges ("AAMC") and/or my review of AAMC records maintained in the ordinary course of business.

2.      Founded in 1876 and based in Washington, D.C., the AAMC is a not-for-profit membership association dedicated to transforming health through medical education, clinical care, biomedical research, and community collaborations.  Its members consist of 170 accredited U.S. & Canadian medical schools, more than 400 teaching hospitals and health systems, and more than 70 faculty and academic societies.

3.      Among other activities, AAMC develops and administers the Medical College Admission Test, or "MCAT."  The MCAT is a standardized, multiple-choice examination created to help medical school admissions offices assess an applicant's problem solving, critical thinking,

and knowledge of natural, behavioral, and social science concepts and principles prerequisite to the study of medicine.

4. The MCAT exam is administered by computer in hundreds of testing sites in the United States, Canada, and other locations throughout the world. The testing sites are operated by a vendor to AAMC, Pearson VUE.

5. The MCAT consists of four multiple-choice sections: (a) Chemical and Physical Foundations of Biological Systems, (b) Biological and Biochemical Foundations of Living Systems, (c) Psychological, Social, and Biological Foundations of Behavior, and (d) Critical Analysis and Reasoning Skills. Under standard test-administration conditions, the exam session lasts just over seven hours, of which six hours consist of actual testing time.

6. In 2023, there are thirty (30) testing dates for the MCAT, as reflected in the following testing calendar:

| Test Date | Score Release Date |
| --- | --- |
| January 13 | Feb. 14 |
| January 14 | Feb. 14 |
| January 19 | Feb. 21 |
| January 27 | March 3 |
| March 11 | April 11 |
| March 24 | April 25 |
| April 14 | May 16 |

- 2 -

| Test Date | Score Release Date |
|-----------|--------------------|
| April 15 | May 16 |
| April 28 | May 31 |
| April 29 | May 31 |
| May 12 | June 13 |
| May 13 | June 13 |
| May 18 | June 21 |
| May 26 | June 27 |
| June 3 | July 6 |
| June 16 | July 18 |
| June 17 | July 18 |
| June 23 | July 25 |
| June 24 | July 25 |
| June 29 | July 31 |
| July 15 | Aug. 15 |
| July 28 | Aug. 29 |

| Test Date | Score Release Date |
|---|---|
| August 4 | Sept. 6 |
| August 19 | Sept. 19 |
| August 25 | Sept. 26 |
| August 26 | Sept. 26 |
| August 31 | Oct. 3 |
| September 1 | Oct. 3 |
| September 8 | Oct. 13 |
| September 9 | Oct. 13 |

7.      I am the Director of the MCAT Accommodation Services and oversee the day-to-day operations of this unit. I have held this position for approximately 3.5 years. Prior to that, I served as the Director of MCAT Accommodations Review for approximately 8.5 years.

8.      I received my undergraduate degree in psychology from the University of Richmond, and my master's and doctoral degrees in clinical psychology from Virginia Polytechnic Institute and State University. As Director of MCAT Accommodation Services, my responsibilities include reviewing individual requests for accommodations, coordinating the scheduling and provision of approved accommodations, and helping to develop and administer policies and procedures relating to MCAT accommodations.

9.    Examinees take the MCAT under the same testing conditions, including standard testing time.  There is an exception to this policy, however, for individuals with documented disabilities who demonstrate that they need accommodations to access the examination(s).

10.    Test accommodations are available on the MCAT for examinees with a disability, as defined under the Americans with Disabilities Act ("ADA") (we also provide certain accommodations for nursing mothers, and for individuals with temporary medical conditions, such as someone with a broken leg who might need more time between exam sections to take restroom breaks).  All requests for accommodations are individually reviewed and, when warranted (*i.e.*, when the examinee demonstrates that he or she is disabled within the meaning of the ADA and needs accommodations to take the examination in an accessible manner), appropriate accommodations are provided.

11.    AAMC's accommodation policies are available to prospective examinees on the AAMC website, at https://students-residents.aamc.org/mcat-exam-accommodations/mcat-exam-accommodations. As noted on the website, AAMC's accommodation policies reflect AAMC's goal of providing "a valid exam while maintaining a level playing field for all test takers."

12.    During the most recent testing year, AAMC processed approximately 2900 requests for accommodations on the MCAT.  The majority of those requests were granted in whole or in part if we had received complete applications from the candidate.

13.    Accommodations are denied when the documentation submitted by a candidate in support of a request fails to demonstrate that the examinee has a disability within the meaning of the ADA, or fails to demonstrate that a particular accommodation is reasonable or necessary to take the MCAT in an accessible manner. The AAMC will also sometimes offer different accommodations than those requested by the applicant where the candidate's functional limitations

- 5 -

warrant some accommodation but not the type or level of accommodation requested by the candidate.

14.     MCAT test accommodation requests are typically reviewed by one or more doctoral-level psychologists or medical professionals, depending on the basis of the request. Some requests are also reviewed, at AAMC's request, by external professionals with expertise in the applicable impairment(s).

15.     Plaintiff A.F. applied for MCAT accommodations January 14, 2023, seeking 50% additional testing time.  I have attached as Exhibit A hereto true and correct copies of the screen shots that comprised her electronic application.

16.     In support of her accommodation request, Plaintiff submitted a personal statement; a letter dated November 22, 2022 from "Pamela Campbell," who reported that she had evaluated Plaintiff in October 2022 and it was her "strong diagnostic impression" that Plaintiff's "history is highly consistent with ADHD, combined type;" a December 23, 2022, from Ms. Campbell, stating that she had been treating Plaintiff for "ADHD and anxiety" and "asking on behalf of [Plaintiff] the consideration for additional testing [time];" and an April 15, 2021 Professor Accommodation Letter from Duke University. True and correct copies of these documents are attached hereto, respectively, as Exhibits B, C, D, and E.

17.     At AAMC's request, Plaintiff also submitted copies of her high school transcript, and her transcript from Duke University.  True and correct copies of these documents are attached hereto, respectively, as Exhibits F and G.

18.     The AAMC gave considerable weight to Plaintiff's personal evaluator's determination of Plaintiff's diagnosed conditions; however, the supporting documents provided by Plaintiff and her supporting professional, Ms. Campbell, did not provide sufficient evidence or

data of Plaintiff's actual functional limitations to support the need for more time to access and/or process the type of test content specific to the MCAT exam. There was also no documentation submitted demonstrating performance in similar standardized testing situations or the receipt of accommodations in similar testing situations.

19.     In a letter dated March 1, 2023, AAMC notified Plaintiff of its decision on her request for accommodations.   AAMC approved her request for stop-the-clock breaks, with 60 minutes of flexible break time, but denied her request for additional testing time.  A true and correct copy of AAMC's decision letter is attached as Exhibit H.

20.     On March 4, 2023, Plaintiff submitted a request for reconsideration to AAMC, by way of a cover note from Plaintiff and a reconsideration letter from her attorney, David Goldstein. Mr. Goldstein's letter also provided two reports from William Benninger, Ph.D., one dated January 2023 titled "ADULT ADHD Evaluation, Summary of Test Results," in which two diagnoses were provided, "ADHD Combined Presentation (314.01)" and "Other Specified Neurodevelopmental Disorder (315.8)" involving "Working Memory and Other Executive Function Impairments;" and a "Psychological Report" dated March 2023 (assessment date listed as January 2023).   In the Psychological Report, Dr. Benninger recommended that Plaintiff be given extra testing time and allowed to test in a "quiet, distraction free environment" to "compensate for the student's difficulty with staying on task and being easily distracted by extraneous stimuli."  Plaintiff's request for reconsideration also included her ACT score report. True and correct copies of these documents, as provided to AAMC, are attached hereto, respectively, as Exhibits I, J, K, L., and M.

21.     AAMC reviewed Plaintiff's request for reconsideration including all supporting documents and did not see sufficient evidence or data to support the provision of extended testing time on the MCAT exam. According to Plaintiff's records, she was diagnosed with ADHD in 2022

and other specified neurodevelopmental disorder in 2023. Although Plaintiff submitted evidence of accommodations being approved at Duke University in April 2021, it was not clear upon what basis those accommodations were provided as Plaintiff was not diagnosed with ADHD or Other Specified Neurodevelopmental Disorder until later (according to the materials provided to AAMC). No documentation was submitted reflecting a history of functional limitations or academic difficulties or the receipt of extra help or intervention earlier in her academic career, as would be expected for such neurodevelopmental disorders. No clear explanation was provided for the later-than-typical diagnoses she received from Ms. Campbell and Dr. Benninger. Additionally, we noted that the extent of impairment suggested by Plaintiff and the informant's behavior rating scales (completed as part of Dr. Benninger's assessment) was not supported by the available evidence of real-life functioning (*e.g.*, academic record, performance on prior standardized testing). While the results of the available objective assessment show some unevenness, performance was in the average range and above. Areas of identified weakness reflect relative personal weakness (compared to strengths) rather than normative impairment compared to most people and were demonstrated on measures with limited relevance to the MCAT exam (*e.g.*, working memory for verbally-presented stimuli, oral reading). The available records also suggested a longer-standing diagnosis of anxiety, but little information was provided related to the current severity of any such anxiety or its impact on Plaintiff's functioning and need for accommodations.

22. AAMC's standard practice upon determining not to approve an accommodation request submitted for reconsideration is to solicit one or more independent second opinions on the request prior to issuing its determination. In this instance, AAMC submitted Plaintiff's accommodation request and all of her supporting documentation to two independent, external

professionals with expertise in the areas of Plaintiff's claimed impairments, Allyson G. Harrison, Ph.D., and Joseph Bernier, Ph.D. AAMC asked both experts to evaluate Plaintiff's documentation and to provide their independent and unbiased input regarding Plaintiff's accommodation request.

23. Dr. Harrison concluded that that Plaintiff's documentation did not support "50% extra test-taking time." She also noted that "conditions may require her to take stop-the-clock breaks in order to calm down, refresh her attentional resources, manage her anxiety and hyperactivity, and employ learned strategies to cope with negative cognitions...." A true and correct copy of Dr. Harrison's March 30, 2023 report is attached hereto as Exhibit N.

24. Dr. Bernier also concluded that "the documentation that has been provided does not support the request for fifty percent additional testing time." He further stated that "[s]ixty minutes of stop the clock breaks as previously approved, and a low distraction test setting appear to be appropriate modifications." A true and correct copy of Dr. Bernier's March 18, 2023 report is attached hereto as Exhibit O.

25. In a letter dated March 31, 2023, AAMC notified Plaintiff of its decision on her reconsideration request. AAMC again approved her request for stop-the-clock breaks, with 60 minutes of flexible break time. In addition, based upon her evaluator's recommendation that she "be permitted to test in a quiet, distraction-free environment," AAMC also authorized Plaintiff to "test in a separate room." AAMC again denied her request for additional testing time. A true and correct copy of AAMC's March 31 decision letter is attached hereto as Exhibit P.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 14, 2023.

*Kathryn M Bugbee* 4/14/2023

Kathryn Bugbee, Ph.D.

# **<u>Exhibit A</u>**



| Overview | Application | External Review | Decision | Audit Trail |
| --- | --- | --- | --- | --- |

### Application Details

| | | | |
| --- | --- | --- | --- |
| Internal Step | Processed | Status Date | 03/01/2023 09:37 AM ET |
| Submission Type | Online | Upcoming Exam Date | 03/11/2023 |
| Submission Date | 01/14/2023 04:33 PM ET | Legal Flag | NA |
| Complete App Received On | 01/14/2023 | Waiver Flag | NA |
| | | Financial Benefit Flag | NA |
| Determination Deadline | 03/15/2023 | Information Release Flag | Yes |
| Approval Date | 03/01/2023 | Other Request Flag | NA |
| Expiration Date | 04/01/2023 | | |

### Contact Details

| | |
| --- | --- |
| Email Id | A.F. @duke.edu |

### Impairments

| Application Id | Application Type | Impairment ↑ | Description | Stated | Confirmed | Created Date ↓ | Added By |
| --- | --- | --- | --- | --- | --- | --- | --- |
| 98764 | Initial | Psychiatric Impairment ⓘ | NA | ✓ | ✓ | 01/14/2023 | A.F. |
| 98764 | Initial | ADHD ⓘ | NA | ✓ | ✓ | 01/14/2023 | A.F. |

## Accommodations

| Application Id | Application Type | Accommodations ↑ | Requested | Previously Approved | Approved | Break Time/Days | Created Date ↓ | Added By |
|---|---|---|---|---|---|---|---|---|
| 98764 | Initial | Stop the Clock Breaks | | | ✓ | 60 Mins | 02/28/2023 | Kathryn Bugbee |
| 98764 | Initial | Regular Time + 50% | ✓ | | | | 01/14/2023 | ▮▮▮ A.F. ▮▮▮ |

## Change History

COLUMN FILTER

| Section Name ↑ | Field Name ↑ | Old Value ↑ | New Value ↑ | Action ↑ | User Type ↑ | User ↑ | Date ↓ |
|---|---|---|---|---|---|---|---|
| Application Details | Assigned To | Shannon Berry | - | Deleted | Admin | Shannon Berry | 03/01/202 |
| Application Details | Application Status | In Progress | Decision | Updated | Admin | Shannon Berry | 03/01/202 |
| Application Details | Expiration Date | - | 12/31/2023 | Updated | Admin | Shannon Berry | 03/01/202 |
| Application Details | Internal Step | Verification | Processed | Updated | Admin | Shannon Berry | 03/01/202 |
| Application Details | Approval Date | - | 03/01/2023 | Updated | Admin | Shannon Berry | 03/01/202 |
| Application Details | Assigned To | Kathryn Bugbee | Shannon Berry | Updated | Admin | Shannon Berry | 03/01/202 |
| Application Details | Internal Step | Clinical Review | Verification | Updated | Admin | Kathryn Bugbee | 02/28/202 |
| Notes | General Note | - | See SF case 02511133 re legal ... | Added | Admin | Kathryn Bugbee | 02/03/202 |
| Application Details | Assigned To | - | Kathryn Bugbee | Added | Admin | Kathryn Bugbee | 02/01/202 |
| Application Details | Internal Step | Intake | Clinical Review | Updated | Applicant | ▮▮▮ A.F. ▮▮▮ | 01/17/202 |

## Background Details

| | |
|---|---|
| **Undergraduate University Name** | Duke University |
| **Have you previously taken the MCAT exam?** | No |
| **Have you taken any standardized tests?** | Yes |
| **Is SAT Taken** | Yes |
| **Is ACT Taken** | Yes |
| **Is GRE Taken** | No |
| **Is Other Exam Taken** | No |
| **Did you receive accommodations before?** | Yes |

## Accommodation Questions

| | |
|---|---|
| **Accommodation History** | As early as first grade I have been given accommodations that have helped with my struggle to read and absorb material as quickly as my peers. I saw a reading specialist daily throughout much of my formative years. During most of my college career at Duke University, I have been granted time and a half in a controlled environment to take all my assessments. |
| **Impairment Management** | In addition to extra time on assessments, I currently take Concerta to assist in my ability to focus, as well as Zoloft to help with the anxiety that is a constant struggle because of my struggle to accomplish tasks that require concentration. Both of these medications, along with the accommodations I have been granted at Duke have allowed me to have success in school much like my normal functioning peers. |
| **Strategies Insufficient Explanation** | The above modalities, including time and a half on assessments have been the appropriate accommodations, which have allowed me to succeed academically. Without these accommodations on the MCAT, I will not be able to finish the high pressure timed MCAT and my score will not reflect my true abilities, even on Zoloft or Concerta. Despite being on Concerta and it helping me focus, i cannot finish high pressured assignments on time. With these accommodations, I will be on a level playing field with my normal functioning peers. What my testing psychologist has likened it to, I am running a race in the water, while my peers are on dry land. The accommodations allow me to be on dry land. |
| **Impairment Documentation History** | I saw a psychiatrist Dr. David Scandinaro throughout high school, who diagnosed me with anxiety. During my time at Duke, I went to Dr. Mina Boazak and was diagnosed with ADHD and re-diagnosed with anxiety. I have received accommodations from Duke University. Documentation of such accommodations are provided in my supplemental materials. |
| **Accommodation Rationale** | I have never been able to finish high time-pressured assessment without having time and a half, including practice MCATs. |

# Exhibit B

To Whom It May Concern:

I am writing to apply for disability-related accommodations on the MCAT, namely 1.5 extended times on all MCAT sections. I am a senior at Duke University who plans on applying to medical school during the 2023-24 application cycle.

I have struggled to process information well since I was young, having to regularly attend sessions with a reading specialist. Other signs during my younger years pointed to similar problems. An assignment that took my peers an hour to complete would take me the entire Sunday to complete.

My high school did not often use pressured time conditions, a reason I retrospectively largely attribute to my success in high school. Despite experiencing struggles with concentration, the ability to take time to refocus, correct impulsive answers, and take extra time to finish exams afforded me the ability to find success in high school. However, in high school i was diagnosed with anxiety disorder. I have been medicated for that since that diagnosis. I believe in retrospect, my ADHD caused much of my anxiety. With the medication to treat anxiety and because my high school did not have time pressured exams which meant lack of focus was not an issue, I was able to graduate in the top 10% of my graduating class. However, I never finished standardized tests on time and that these scores never reflected my academic success. Despite having one of the highest GPAs in my class and taking AP classes, I was scoring below average in the class when our school released averages on standardized tests scores. During my standardized testing, I found it difficult to read the words on the page while attempting to process a million other stimuli at the same time. I never finished sections on time, especially sections like the reading and science sections on the ACT, which primarily included passage-based questions.

As I entered college, I still struggled with test taking. As an example, in my Biology 201 class in college, I took an entirely multiple choice, passage-based exam, one largely similar to the bio-biochem section of the MCAT, and I fixated on a single problem for over 30 minutes, rereading the passage and problem a number of times, but unable to concentrate. I read the words on the page but did not process them. Instead, my mind bounced from thought to thought, and I ended up leaving half of the test entirely blank. Experiences like this were the final turning point at which my teachers and parents knew it was crucial for me to have additional time on tests.

Since being diagnosed with ADHD and receiving extended time, I have noticed a world of difference in my ability to have an equal chance at academic success. When my peers finish their tests on time, I finish my tests on time. When my peers struggle to get to the last problem on a test, I struggle to get to the last problem.

The same is true on the MCAT. Despite employing strategic time-taking strategies and taking Concerta on a daily basis, I do not finish any of the sections on time. For example, on CARS, a section independent of background content knowledge, I am lucky if I finish 8/13 passages. The same has been true of the other sections as well. However, when I have taken the tests under time and a half conditions, I still do not finish, but it is usually two passages instead of 7. When I am able to take time to refocus and read the passages fully, I am able to get a fair shot at the test. I might still not get every answer right, but I can get an equal shot as my peers.

Trouble concentrating, easily distracted. Often mindlessly reading the words on the page but distracted by my own thoughts finding myself reading a passage for minutes on end without actually processing a single word on the page.

      Hyperactivity, impulsivity, and inattention have plagued my life. As a child and a young adult, I have been regularly labeled as "spacey", remembering teachers and classmates regularly repeating, "Earth to █A.F.█." My nail beds are ruined from picking my nail, a regulatory compensatory strategy I have had since third grade. My room is constantly a disorganized mess, despite conscious efforts to attempt to remain organized. I struggle to initiate tasks, such as taking weeks to respond to emails and texts, which has caused relationship problems. I forget to do things, even forgetting to submit homework assignments on time as a senior in college. It is not *if* I will lose my keys or my computer or my phone that day, it is how many times I will lose these things.. In just one month, I left my computer in the library overnight once and outside overnight in our campus' main plaza *3 times*, remaining unaware of this until I arrived at class the next day without my computer in my backpack.

      If I did not receive extended time on the MCAT, I would not be able to have a fair shot of showing medical schools my full potential as an applicant and future doctor. Thank you for taking the time to read this letter. Please let me know if you need any additional information.

Sincerely,

█A.F.█

# **Exhibit C**



Animo
Sano
Psychiatry

5501 Fortunes Ridge Rd, Suite P
Durham, NC, 27713
919-391-7202
drboazak@animosanopsychiatry.com

11/14/22:

November 14, 2022

**Re: Examinee's name:** A.F.

Date of Birth:

Date of Initial Evaluation: 10-28-2022, age 21

MCAT testing date: 1/27/2023

To whom it may concern,

     A.F. (dob: ) has been seen in my capacity as a psychiatric physician extender at Animo Sano Psychiatry, PLLC in Durham, NC, an adult ADHD specialty clinic since 10/28/21. Through the course of my work with A.F. , I have conducted a comprehensive clinical evaluation (the current gold standard diagnostic approach recommended by the AACAP and AAP) aided by psychometric testing and it is my strong diagnostic impression that A.F. 's history is highly consistent with ADHD, combined type. She also has a history of Generalized Anxiety Disorder. From an ADHD perspective this impression is based on the presence of multiple (>5) inattentive symptoms and multiple (>5) hyperactive/impulsive symptoms that have been present throughout A.F. 's life including childhood, her strong family history of ADHD, and the consequent dysfunction that A.F. is facing in multiple areas of her life due to these symptoms. A.F. has minimal documentation of dysfunction in her childhood with academics, however what she does have available concurs with the ADHD diagnosis. In addition, she currently has accommodations at Duke which have shown to be beneficial during her time at the University. Given the extent of A.F. 's symptoms and the consequent related dysfunction, it is my strong recommendation that A.F. be provided accommodations for the MCAT testing. In discussion with A.F. , extension of testing time by 100% for the multiple choice/reading and writing portions of the testing would provide her the best opportunity to demonstrate her true capabilities. We ask that you please consider these accommodations for her.

I am available for contact if needed.

Kind regards,

Pamela Campbell, MSPAS, PA-C
Cell: 336-509-6341

Pamela Campbell

cc: Mina Boazak, MD MMCi
Medical Director, Animo Sano Psychiatry PLLC



# Exhibit D



Animo
Sano
Psychiatry

5501 Fortunes Ridge Rd, Suite P
Durham, NC, 27713
919-391-7202
drboazak@animosanopsychiatry.com

December 23, 2022

**Re: Examinee's name:** ████ A.F.

Date of Birth: ████

MCAT testing date: 1/27/2023

To whom it may concern,

I am writing on behalf of ████ A.F. ████, whom I have been treating for ADHD and anxiety. She is scheduled to take the MCAT on 1/27/23 and had requested a letter from me to support her request for additional time with testing within the 60 day notice requirement. A.F. has experienced in the past difficulty with emotional regulation with standardized and non-standardized tests despite having many coping/study skills. This along with the executive dysfunction impairment associated with ADHD, has negatively impacted her testing performance in the past and failed to demonstrate her true academic potential. She is requesting additional time for test taking which is documented in her accommodation letter.

Given an unexpected medical emergency and leave of absence from work, the processing of her request was delayed. I am asking on behalf of A.F., the consideration for additional testing be allowed despite the delay in request. I am available if needed to be contacted in person and appreciate your time and consideration.

Sincerely,

Pamela Campbell, MSPAS, PA-C
Cell: 336-509-6341

# **Exhibit E**

**From:** sdao@duke.edu
**Subject:** Semester Request D rect ons and Professor Letter
**Date:** Apr 15, 2021 at 3:15 PM
**To:** A.F. @duke.edu





Disability Management Systems
402 Oregon Street, Suite 102, Box 90142, Durham, NC 27708, Telephone: (919) 668-1267, Fax: (919) 668-3977, http://www.access.duke.edu

April 15, 2021.

### PROFESSOR ACCOMMODATION LETTER

April 15, 2021

**Dear Professor:**

A.F. **(ID#**  **)**, a student in your class this semester, is registered with the Student Disability Access Office at Duke University. This student has a documented disability and is therefore entitled to certain reasonable academic accommodations in accordance with the Americans with Disabilities Act (ADA) of 1990 and the ADA Amendments Act of 2008.

Below lists the approved accommodation(s) that the student is eligible to receive. The student will discuss which accommodation(s) they wish to have implemented in your class.

- **Extended Time on all timed Quizzes, Tests, and Exams: Time and a half (50%):** *Faculty members are asked to make arrangements privately with the student who needs additional time. Options may include asking the student to come to class before the test is scheduled to begin, asking the student to stay after the test is scheduled to end, or reserving space within the department (such as a conference room or office). If another space is arranged, the assessment should be administered in a room with minimal interruptions or distractions, such as ringing telephones or nearby conversations.*
    CHEM 210L 212 MODERN APPLICATIONS LABORATORY (4708)
    PHYSEDU 225 01 SPORTS LEADERSHIP (10658)
    PSY 101 05D INTRODUCTORY PSYCHOLOGY (4432)
    DANCE 165 01 LET'S DANCE! LIVE ART & PERF (5699)
    PSY 394 12 RESEARCH INDEPENDENT STUDY (10084)
    CHEM 210D 21D MOD APPS CHEM PRINCIPLES (4697)
    STA 101L 002 DATA ANALY/STAT INFER (4887)
    PSY 101 001 INTRODUCTORY PSYCHOLOGY (4427)
    BIOLOGY 201L 06L MOLECULAR BIOLOGY (9242)
    STA 101L 05L DATA ANALY/STAT INFER (4892)
    CHEM 210D 002 MOD APPS CHEM PRINCIPLES (4692)
    BIOLOGY 201L 001 MOLECULAR BIOLOGY (9236)

- **Breaks w/o Penalty:** *(In the classroom and during testing) Rest breaks without penalty is typically a brief break; however, every student has different needs. Typically, a rest break is used in situations where a student needs to check his/her blood sugar level, intake food/liquid, use the restroom, or leave class for whatever reason due to the nature of the disability.*
    CHEM 210L 212 MODERN APPLICATIONS LABORATORY (4708)
    PHYSEDU 225 01 SPORTS LEADERSHIP (10658)
    PSY 101 05D INTRODUCTORY PSYCHOLOGY (4432)
    DANCE 165 01 LET'S DANCE! LIVE ART & PERF (5699)
    PSY 394 12 RESEARCH INDEPENDENT STUDY (10084)
    CHEM 210D 21D MOD APPS CHEM PRINCIPLES (4697)
    STA 101L 002 DATA ANALY/STAT INFER (4887)

PSY 101 001 INTRODUCTORY PSYCHOLOGY (4427)
BIOLOGY 201L 06L MOLECULAR BIOLOGY (9242)
STA 101L 05L DATA ANALY/STAT INFER (4892)
CHEM 210D 002 MOD APPS CHEM PRINCIPLES (4692)
BIOLOGY 201L 001 MOLECULAR BIOLOGY (9236)

These accommodations are recommended after thoughtful analysis of the student's disability-related need and the University's legal obligations under the Americans with Disabilities Act (ADA) and Section 504 of The Rehabilitation Act.

The Intent of all reasonable accommodations is to provide students with disabilities equal opportunity, not to undermine academic standards or course requirements. Please review the recommended accommodations and notify me within **3 business days** of receiving this email if for any reason the accommodations are not appropriate in this context. I will consult with you through a deliberative process to detremine appropriate reasonable accommodations for this student. If I do not hear from you, I will assume you are in agreement with the proposed accommodations.

If you have any questions or concerns please feel free to email me directly.

**Sincerely,**


**Student Disability Access Office**

If you have a student you feel or suspect may have a disability, please refer them to the **Student Disability Access Office**, and our office can determine whether or not they have a disability under the provisions of the ADA.  Again, thank you for helping to make Duke University accessible to our students with disabilities.

**THE INFORMATION CONTAINED IN THIS LETTER IS CONFIDENTIAL AND INTENDED FOR THE SOLE USE OF THE DESIGNATED RECIPIENTS. IF THIS INFORMATION COMES TO YOU BY MISTAKE, ANY DISSEMINATION, USE, OR REPRODUCTION OF THE INFORMATION THEREIN IS STRICTLY PROHIBITED. IF YOU RECEIVE THIS INFORMATION IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY AND DELETE AT ONCE.**

# **Exhibit F**

# Columbus School for Girls

### 65 S. DREXEL AVENUE    COLUMBUS, OHIO 43209
www.columbusschoolforgirls.org
(614) 252-0781

A.F.

Parents of A.F.

Form XII
Advisor: Ms. Leah Beth Weintraub
Academic Year: 2018-2019
Marking Period: May Program
Date: June 03, 2019

| Course | S1 | Exam | S1 F | S2 | Exam | S2 F | May | Final | Credit |
|---|---|---|---|---|---|---|---|---|---|
| AP English Lang & Comp XII | | | | B+ | | 88 | | 88 | .50 |
| Contemporary Texts & Cultural Criticisms: End of the World | A | A | 93 | | | | | 93 | .50 |
| Advanced Statistics | A+ | B+ | 97 | | | | | 97 | .50 |
| Advanced Statistics | | | | A+ | | 100 | | 100 | .50 |
| Abstract Algebra | A | | 95 | | | | | 95 | .50 |
| Differential Equations | | | | A | | 97 | | 97 | .50 |
| AP Macroeconomics | A+ | A | 97 | | | | | 97 | .50 |
| AP Macroeconomics | | | | A+ | | 99 | | 99 | .50 |
| Human Anatomy & Physiology | A | | 97 | | | | | 97 | .50 |
| Human Anatomy & Physiology | | | | A | | 95 | | 95 | .50 |
| AP Biology | A | A | 95 | | | | | 95 | .50 |
| AP Biology | | | | A | | 94 | | 94 | .50 |
| Concert Choir | A+ | | 100 | | | | | 100 | .25 |
| Concert Choir | | | | A+ | | 98 | | 98 | .25 |
| Interscholastic Athletics XII | | | | P | | P | | P | 0.00 |
| Service XII | | | | P | | P | | P | 0.00 |
| Writing Center: Peer Tutor | P | | P | | | | | P | .20 |
| Writing Center: Peer Tutor | | | | P | | P | | P | .20 |
| Senior May Program Project | | | | P | | P | | P | 0.00 |

| GRADING SCALE | | |
|---|---|---|
| A+ | 98-100 | 4.00 |
| A | 92-97 | 4.00 |
| A- | 90-91 | 4.00 |
| B+ | 88-89 | 3.70 |
| B | 82-87 | 3.30 |
| B- | 80-81 | 3.00 |
| C+ | 78-79 | 2.70 |
| C | 72-77 | 2.30 |
| C- | 70-71 | 2.00 |
| D+ | 68-69 | 1.70 |
| D | 62-67 | 1.30 |
| D- | 60-61 | 1.00 |
| F | Below 60 | 0.00 |
| P | | |
| I | | |
| X | | |

| DAILY ATTENDANCE | | | | |
|---|---|---|---|---|
| Semesters | S1 | S2 | May | Total |
| Absences | 5.00 | 5.00 | 0.00 | 10.00 |
| Tardies | 7.00 | 7.00 | 0.00 | 14.00 |

| SUMMARY STATISTICS | IX | X | XI | XII |
|---|---|---|---|---|
| Yearly Average (%) | 95.2253 | 94.8043 | 96.9600 | 95.8462 |
| Yearly GPA (4.0) | 4.0000 | 4.0000 | 4.0000 | 3.9769 |
| Yearly Credits Earned | 7.3250 | 6.9000 | 6.2500 | 6.9000 |
| Cumulative Average (%) | 95.2253 | 95.0211 | 95.6129 | 95.6691 |
| Cumulative GPA (4.0) | 4.0000 | 4.0000 | 4.0000 | 3.9944 |
| Cumulative Credits Earned | 7.3250 | 14.2250 | 20.4750 | 27.3750 |

*Pamela Hartshorne*

*Pamela Hartshorne, Upper School Director*

# Columbus School for Girls

## 65 S. DREXEL AVENUE    COLUMBUS, OHIO 43209
www.columbusschoolforgirls.org
(614) 252-0781

A.F.

Parents of A.F.

Form XI
Advisor: Ms. Leah Beth Weintraub
Academic Year: 2017-2018
Marking Period: May Program
Date: June 19, 2018

| Course | S1 | Exam | S1 F | S2 | Exam | S2 F | May | Final | Credit |
|---|---|---|---|---|---|---|---|---|---|
| AP English Lit & Comp XI | A | A | 96 | | | | | 96 | .50 |
| AP English Lit & Comp XI | | | | A | | 96 | | 96 | .50 |
| AP Calculus BC | A | A | 97 | | | | | 97 | .50 |
| AP Calculus BC | | | | A+ | | 98 | | 98 | .50 |
| Civics | | | | A | A+ | 96 | | 96 | .50 |
| Film and Historical Truth | A | A | 94 | | | | | 94 | .50 |
| Organic Chemistry | A+ | | 99 | | | | | 99 | .50 |
| AP Physics C: Mechanics | A+ | A+ | 98 | | | | | 98 | .50 |
| AP Physics C: Mechanics | | | | A+ | | 100 | | 100 | .50 |
| AP Spanish Language | A | A | 94 | | | | | 94 | .50 |
| AP Spanish Language | | | | A | | 95 | | 95 | .50 |
| Concert Choir | A+ | | 100 | | | | | 100 | .25 |
| Concert Choir | | | | A+ | | 100 | | 100 | .25 |
| Interscholastic Athletics XI | P | | P | P | | P | | P | 0.00 |
| Service XI | | | | P | | P | | P | 0.00 |
| Junior May Experience | | | | | | | P | P | |

| GRADING SCALE | | |
|---|---|---|
| A+ | 98-100 | 4.00 |
| A | 92-97 | 4.00 |
| A- | 90-91 | 4.00 |
| B+ | 88-89 | 3.70 |
| B | 82-87 | 3.30 |
| B- | 80-81 | 3.00 |
| C+ | 78-79 | 2.70 |
| C | 72-77 | 2.30 |
| C- | 70-71 | 2.00 |
| D+ | 68-69 | 1.70 |
| D | 62-67 | 1.30 |
| D- | 60-61 | 1.00 |
| F | Below 60 | 0.00 |
| P | | |
| I | | |
| X | | |

| DAILY ATTENDANCE | | | | |
|---|---|---|---|---|
| Semesters | S1 | S2 | May | Total |
| Absences | 0.00 | 5.00 | 0.00 | 5.00 |
| Tardies | 2.00 | 6.00 | 0.00 | 8.00 |

| SUMMARY STATISTICS | IX | X | XI | XII |
|---|---|---|---|---|
| Yearly Average (%) | 95.2253 | 94.8043 | 96.9600 | |
| Yearly GPA (4.0) | 4.0000 | 4.0000 | 4.0000 | |
| Yearly Credits Earned | 7.3250 | 6.9000 | 6.2500 | |
| Cumulative Average (%) | 95.2253 | 95.0211 | 95.6129 | |
| Cumulative GPA (4.0) | 4.0000 | 4.0000 | 4.0000 | |
| Cumulative Credits Earned | 7.3250 | 14.2250 | 20.4750 | |

*Pamela Hartshorne, Upper School Director*

Jennifer McLechtenColumbus School for Girls
Head of School

65 S. DREXEL AVENUE   COLUMBUS, OHIO 43209
(614) 252-0781   www.columbusschoolforgirls.org

School Code
361530

Birth Date: ▮

**A.F.**

*Secondary School Transcript*

Graduated:

## GRADE IX

2015-2016

| Term | Course | Grade | Credit |
|------|--------|-------|--------|
| S1 | World Literature | A | .500 |
| S2 | World Literature | A | .500 |
| S1 | Honors Algebra II | A | .500 |
| S2 | Honors Algebra II | A | .500 |
| S1 | World History | A | .500 |
| S2 | World History | A | .500 |
| S1 | Honors Biology | A | .500 |
| S2 | Honors Biology | A | .500 |
| S1 | Honors Chemistry | A | .500 |
| S2 | Honors Chemistry | A | .500 |
| S1 | Spanish III | A | .500 |
| S2 | Spanish III | A | .500 |
| S1 | Concert Choir | A+ | .250 |
| S2 | Concert Choir | A+ | .250 |
| S2 | Media Design, Dev, Production | A+ | .500 |
| FY | Interscholastic Athletics IX | P | |
| S1 | Health and Wellness | A | .325 |

## GRADE XI

2017-2018

| Term | Course | Grade | Credit |
|------|--------|-------|--------|
| Sum | Health II | A+ | .250 |
| S1 | AP English Lit & Comp XI | A | .500 |
| S2 | AP English Lit & Comp XI | | |
| S1 | AP Calculus BC | A | .500 |
| S2 | AP Calculus BC | | |
| S2 | Civics | | |
| S1 | Film and Historical Truth | A | .500 |
| S1 | Organic Chemistry | A+ | .500 |
| S1 | AP Physics C: Mechanics | A+ | .500 |
| S2 | AP Physics C: Mechanics | | |
| S1 | AP Spanish Language | A | .500 |
| S2 | AP Spanish Language | | |
| S1 | Concert Choir | A+ | .250 |
| S2 | Concert Choir | | |
| FY | Interscholastic Athletics XI | | |
| S2 | Service XI | | |

## GRADE X

2016-2017

| Term | Course | Grade | Credit |
|------|--------|-------|--------|
| Sum | Public Speaking | A | .250 |
| Sum | PE: Water Safety & Self-Defens | A | .150 |
| S1 | Survey of American Literature | A | .500 |
| S2 | Survey of American Literature | A | .500 |
| S1 | Pre-calculus/Calculus A | A | .500 |
| S2 | Pre-calculus/Calculus A | A | .500 |
| S1 | Honors United States History | A | .500 |
| S2 | Honors United States History | A- | .500 |
| S1 | AP Chemistry | A | .500 |
| S2 | AP Chemistry | A | .500 |
| S1 | Honors Physics | A | .500 |
| S2 | Honors Physics | A+ | .500 |
| S1 | Spanish IV | A | .500 |
| S2 | Spanish IV | A | .500 |
| S1 | Concert Choir | A | .250 |
| S2 | Concert Choir | A+ | .250 |
| FY | Interscholastic Athletics X | P | |

| SUMMARY STATISTICS | IX | X | XI | XII |
|--------------------|------|------|------|-----|
| Yearly Average (%) | 95.2253 | 94.8043 | 96.7143 | |
| Yearly GPA (4.0) | 4.0000 | 4.0000 | 4.0000 | |
| Yearly Credits Earned | 7.3250 | 6.9000 | 3.5000 | |
| Cumulative Average (%) | 95.2253 | 95.0211 | 95.3554 | |
| Cumulative GPA (4.0) | 4.0000 | 4.0000 | 4.0000 | |
| Cumulative Credits Earned | 7.3250 | 14.2250 | 17.7250 | |

Note: Only courses taken at CSG are used when computing averages and honors. Credits earned, however, include those earned at CSG as well as those accepted from other schools. *We do not rank.*

Comments:

_____
*School Official*

*Upper School Division Director*
*Title*

# **Exhibit G**

# DUKE UNIVERSITY - Unofficial Transcript

**Name:** A.F.

**Student ID:**

1/14/2023

## Academic Program History

| | | |
|---|---|---|
| Program: | **Trinity College** | |
| | (*Status: Active in Program*) | |
| Plan: | **Psychology (BS)** *(Major)* | |
| Plan: | **Chemistry - Minor** *(Minor)* | |

*Beginning of Undergraduate Record*

### 2019 Fall Term

**Test Credits Applied Toward Trinity College**

| Course | | Description | Units Earned | Official Grade |
|---|---|---|---|---|
| BIOLOGY | 21 | GENERAL BIOLOGY | 1.000 | AP |
| CHEM | 20 | GENERAL CHEMISTRY CREDIT | 1.000 | AP |
| ECON | 22 | INTRODUCTORY MACROECONOMICS | 1.000 | AP |
| MATH | 21 | INTRODUCTORY CALCULUS I | 1.000 | AP |
| MATH | 22 | INTRODUCTORY CALCULUS II | 1.000 | AP |
| PHYSICS | 25 | INTRODUCTORY PHYSICS I | 1.000 | AP |
| | | Transfer Totals: | 6.000 | |

| Course | | Description | Units Earned | Official Grade | Grading Basis |
|---|---|---|---|---|---|
| CHEM | 101DL | CORE CONCEPTS IN CHEMISTRY | 1.000 | A | GRD |
| SOCIOL | 89S | FIRST-YEAR SEMINAR (TOP) | 1.000 | A+ | GRD |
| **Course Topic:** | | **EDUCATIONAL INEQUALITY** | | | |
| SPANISH | 102 | ELEMENTARY SPANISH 2 | 1.000 | A | GRD |
| WRITING | 101 | ACADEMIC WRITING | 1.000 | A | GRD |
| **Course Topic:** | | **COMMUNICATING SCIENCE** | | | |

Term GPA: 4.000    Term Earned: 10.000

Cum GPA: 4.000    Cum Earned: 10.000

*\*\*\* Term Honor: Fall Dean's List With Distinction \*\*\**

### 2020 Spring Term

| Course | | Description | Units Earned | Official Grade | Grading Basis |
|---|---|---|---|---|---|
| BIOLOGY | 202L | GENETICS AND EVOLUTION | 1.000 | A | GRD |
| CHEM | 201DL | ORGANIC CHEMISTRY I | 1.000 | A | GRD |
| ECON | 101D | ECONOMIC PRINCIPLES | 1.000 | S | S/U |
| SPANISH | 203 | INTERMEDIATE SPANISH | 1.000 | A | GRD |

Term GPA: 4.000    Term Earned: 4.000

Cum GPA: 4.000    Cum Earned: 14.000

### 2020 Summer Term 1

| Course | | Description | Units Earned | Official Grade | Grading Basis |
|---|---|---|---|---|---|
| MATH | 202 | MULTIVAR CALCULUS FOR ECON | 1.000 | A | GRD |

| **DUKE UNIVERSITY - Unofficial Transcript** | Page 2 of 3 |

**Name:** A.F.                                                                    1/14/2023
**Student ID:**

|  | Term GPA: | 4.000 | Term Earned: | 1.000 |
|  | Cum GPA: | 4.000 | Cum Earned: | 15.000 |

## 2020 Fall Term

| Course | | Description | Units Earned | Official Grade | Grading Basis |
|--------|--|-------------|-------------|----------------|---------------|
| CHEM | 202D | ORGANIC CHEMISTRY II | 1.000 | A | GRD |
| CHEM | 202L | ORGANIC CHEMISTRY II LAB | 0.250 | A | GRD |
| NEUROSCI | 150 | RESEARCH PRACTICUM | 0.500 | S | S/U |
| PSY | 220 | PSYCHOLOGY OF GENDER | 1.000 | A+ | GRD |
| PSY | 240 | EDUCATIONAL PSYCHOLOGY | 1.000 | A+ | GRD |
| SPANISH | 204 | ADV INTERMEDIATE SPANISH | 1.000 | A+ | GRD |

|  | Term GPA: | 4.000 | Term Earned: | 4.750 |
|  | Cum GPA: | 4.000 | Cum Earned: | 19.750 |

## 2021 Spring Term

| Course | | Description | Units Earned | Official Grade | Grading Basis |
|--------|--|-------------|-------------|----------------|---------------|
| BIOLOGY | 201L | MOLECULAR BIOLOGY | 1.000 | A | GRD |
| CHEM | 210D | MOD APPS CHEM PRINCIPLES | 1.000 | A- | GRD |
| CHEM | 210L | MODERN APPLICATIONS LABORATORY | 0.250 | A | GRD |
| PSY | 101 | INTRODUCTORY PSYCHOLOGY | 1.000 | A | GRD |
| PSY | 394 | RESEARCH INDEPENDENT STUDY | 1.000 | A+ | GRD |
|  | **Course Topic:** | **EARLY ASD AND ADHD DETECTION** | | | |

|  | Term GPA: | 3.929 | Term Earned: | 4.250 |
|  | Cum GPA: | 3.981 | Cum Earned: | 24.000 |

## 2021 Fall Term

| Course | | Description | Units Earned | Official Grade | Grading Basis |
|--------|--|-------------|-------------|----------------|---------------|
| BIOCHEM | 301 | INTRO BIOCHEMISTRY I | 1.000 | A | GRD |
| NEUROSCI | 376 | CONTEMPORARY NEUROSCI METHODS | 1.000 | A | GRD |
| PSY | 102 | COGNITIVE PSYCHOLOGY | 1.000 | A+ | GRD |
| PSY | 393 | RESEARCH INDEPENDENT STUDY | 1.000 | A | GRD |
|  | **Course Topic:** | **EARLY ADHD & AUTISM DETECTION** | | | |
| PUBPOL | 256 | SOCIAL INNOVATION | 1.000 | A | GRD |

|  | Term GPA: | 4.000 | Term Earned: | 5.000 |
|  | Cum GPA: | 3.986 | Cum Earned: | 29.000 |

THIS IS <u>NOT</u> AN OFFICIAL TRANSCRIPT – FOR REFERENCE ONLY

**DUKE UNIVERSITY - Unofficial Transcript**      Page 3 of 3

**Name:** A.F.

**Student ID:** 

1/14/2023

*** *Term Honor: Fall Dean's List With Distinction* ***

## 2022 Spring Term

| Course | | Description | Units Earned | Official Grade | Grading Basis |
|--------|--|-------------|--------------|----------------|---------------|
| AAAS | 286S | CRITICAL PEDAGOGY OF HIP HOP | 1.000 | A+ | GRD |
| PHYSICS | 141L | GENERAL PHYSICS I | 1.000 | A+ | GRD |
| PSY | 105 | ABNORMAL PSYCHOLOGY | 1.000 | A+ | GRD |
| PSY | 203 | PRACTICUM | 0.500 | S | S/U |
| PSY | 204L | PSYCH METHODS & STATISTICS 1 | 1.000 | A | GRD |

        Term GPA: 4.000      Term Earned: 4.500

        Cum GPA: 3.988      Cum Earned: 33.500

*** *Term Honor: Spring Dean's List W/Distinction* ***

## 2022 Fall Term

| Course | | Description | Units Earned | Official Grade | Grading Basis |
|--------|--|-------------|--------------|----------------|---------------|
| HLTHPOL | 395T | BASS CONNECTION HEALTH POLICY | 1.000 | A | GRD |
| | **Course Topic:** | **PROMOTING SEXUAL FUNCTION** | | | |
| PHYSICS | 142L | GENERAL PHYSICS II | 1.000 | A+ | GRD |
| PSY | 205L | PSYCH METHODS & STATISTICS 2 | 1.000 | A+ | GRD |
| PSY | 493 | RESEARCH INDEPENDENT STUDY | 1.000 | A+ | GRD |
| | **Course Topic:** | **EARLY ADHD & AUTISM DETECTION** | | | |

        Term GPA: 4.000      Term Earned: 4.000

        Cum GPA: 3.989      Cum Earned: 37.500

*** *Term Honor: Fall Dean's List With Distinction* ***

## 2023 Spring Term

| Course | | Description | Units Earned | Official Grade | Grading Basis |
|--------|--|-------------|--------------|----------------|---------------|
| PSY | 103 | DEVELOPMENTAL PSYCHOLOGY | 0.000 | | GRD |
| PSY | 412S | CLINICAL INTERVENTIONS: DBT | 0.000 | | GRD |
| PSY | 496 | DISTINCTION THESIS WORKSHOP | 0.000 | | GRD |
| VMS | 337 | HISTORY OF HIP-HOP | 0.000 | | GRD |

        Term GPA: 0.000      Term Earned: 0.000

        Cum GPA: 3.989      Cum Earned: 37.500

**Undergraduate Career Earned**

        Cum GPA: 3.989      Cum Earned: 37.500

THIS IS <u>NOT</u> AN OFFICIAL TRANSCRIPT – FOR REFERENCE ONLY

# **Exhibit H**



# MCAT Accommodations Services

**AAMC ID:** ████████
**Status: Partial Approval**
**Accommodations Expire: End of testing year 2023**

3/1/2023

Dear ████ A.F. ████ :

You have been approved for the following accommodations:

- Stop the clock breaks: 60 minutes of flexible break time

We have reviewed your application and considered the recommendations of your qualified professional as well as your history of accommodations. However, the available documentation does not provide sufficient evidence of functional limitation to support an approval for some of your requests. Here is what we couldn't approve and why:

You requested 50% extended time on the basis of ADHD and a psychiatric impairment. Your records document the diagnoses of ADHD and generalized anxiety disorder and support the need for time to manage symptoms on test day. To that end, we have approved additional time for breaks (i.e., stop the clock breaks) to provide opportunities for you to refresh your attentional resources, manage anxiety, regroup, and refocus without taking time away from test taking. There is not sufficient evidence, or data (based on objective assessment), to support the need for more time to access and/or process the actual test content as would be consistent with the accommodation of extended testing time. We additionally note that documentation of performance on prior standardized testing was not submitted for review.

We hope this information helps you understand the rationale for our determination. Be assured that your application materials have been treated with due respect, fairness, and confidentiality. For more information about the review process, please see **"Understanding the Clinical Review Process"** on our website. Additional information regarding next steps in the accommodations process can be found on the following page.

Sincerely,


MCAT Accommodation Services
**accommodations@aamc.org**
**www.aamc.org/mcat/accommodations**

MCAT® is a program of the Association of American Medical Colleges

The Association of American Medical Colleges is committed to providing appropriate accommodations to individuals with disabilities as defined by relevant federal law.



## Finish the process…

**Read the following inserts for instructions:**

- **I've Been Approved, What's Next?**

- **What Can I Expect When I Arrive at the Test Center?**

## Determination questions?

- **Contact us at <u>accommodations@aamc.org</u>.**

- **Your evaluators can contact us, but don't forget to submit a release form using the Service Request function within the MCAT Accommodations Online system.**

## Requesting re-review

- **If you feel you still need an accommodation that was not approved or have additional documents to submit, you may seek a re-review of your request. For more information see the "What Are My Options for a Re-review?" insert.**

## Preparation resources

- **Visit the <u>MCAT Official Prep Hub</u> to learn more about accommodations for practice tests.**

**Please note that the 2023 testing year ends on September 9, 2023; see our website for all applicable time guidelines.**

MCAT® is a program of the Association of American Medical Colleges

The Association of American Medical Colleges is committed to providing appropriate accommodations to individuals with disabilities as defined by relevant federal law.

# **Exhibit I**

To whom it may concern,

Please find attached a supplemental report from Dr. Benninger and a letter from David Goldstein, as well as my ACT scores. I have also included the initial report from Dr. Benninger that David Goldstein supplemented my application with earlier in February. In reviewing my application, I realized I inadvertently checked that I had accommodations for the ACT. This was done in error. Please accept the letter from Mr. Goldstein and supplemental report from Dr. Benninger as the basis for my appeal. Time is of the essence, as I plan to apply this cycle for medical school. My applications need to be in by early June to give me the best chance of being accepted to medical school. Thank you for your attention to this issue.

Yours truly,

A.F.

# **Exhibit J**

# DAVID A. GOLDSTEIN CO., L.P.A.



David A. Goldstein*
Stuart A. Keller

T (614) 222-1889
F (614) 222-1899
dgoldstein@dgoldsteinlaw.com
www.dgoldsteinlaw.com
*Also Licensed in Kentucky

March 4, 2023

**VIA ELECTRONIC MAIL**
AAMC, MCAT Accommodations Services (accomodations@aamc.org)
Attn: Mailroom Supervisor
655 K Street, NW, Suite 100
Washington D.C. 20001

    Re:  Appeal of Accommodation
       My Client:  A.F.
       AAMC No.:
       DOB

To Whom It May Concern,

    On or about March 1, 2023, Accommodation Services advised my client, A.F. ▮, it approved "Stop the clock breaks: 60 minutes of flexible break time" as an accommodation for her disability.[1] Accommodation Services justified its position by setting forth:

> "…the available documentation does not provide sufficient evidence of functional limitation to support an approval for some of your requests. Here is what we couldn't approve and why: You requested 50% extended time on the basis of ADHD and a psychiatric impairment. Your records document the diagnoses of ADHD and generalized anxiety disorder and support the need for time to manage symptoms on test day. To that end, we have approved additional time for breaks (i.e., stop the clock breaks) to provide opportunities for you to refresh your attentional resources, manage anxiety, regroup, and refocus without taking time away from test taking. There is not sufficient evidence, or data (based on objective assessment), to support the need for more time to access and/or process the actual test content as would be consistent with the accommodation of extended testing time. We additionally note that documentation of performance on prior standardized testing was not submitted for review."

    The decision by Accommodation Services is unfounded and discriminatory. A.F. produced overwhelming evidence from a psychiatrist and a psychologist she suffers from

---

[1] Although I have sent three letters to AAMC advising of my representation of A.F. , AAMC failed to communicate with me regarding its decision as to A.F. 's accommodation.

*Columbus Office*                *Marion Office*
511 S. High Street, Suite 200        355 East Center Street
Columbus, Ohio 43215           Marion, Ohio 43302

multiple disorders, including Other Specified Neurodevelopmental Disorder (315.8), ADHD, Working Memory and Other Executive Function Impairments, and Anxiety Disorder. Both doctors opined that ▇▇ A.F. ▇▇ must be provided the requested accommodation.

The need for prior test scores or classroom performance has no basis for whether an accommodation should be provided for the MCAT. The determining factor should be what applicants treating doctors opine as to their patient's condition, diagnosis, disability, and rationale for the accommodation.

With that said, enclosed is a supplemental report from William B. Benninger, Ph.D. whereby he states ▇▇ A.F. ▇▇'s disability, the basis of said disability and the need for the following accommodations based upon her disability:

"Based on the findings in this report this individual fully qualifies for accommodations on the MCAT. Also, while the breaks previously allowed are important, they will not fully compensate for her disability. So, obviously extra time is needed.

1. Extended time - will compensate for the working memory and inattentive symptoms documented in the testing and will compensate for the extra time a student needs due to their difficulty with sustaining attention with a mentally demanding task and therefore taking longer for those tasks. It will also help compensate for having to reread questions and answers multiple times due to a working memory deficit.

2. Test taking in a quiet, distraction free environment will compensate for the student's difficulty with staying on task and being easily distracted by extraneous stimuli."

I have represented several other individuals who have sought accommodation from AAMC, and in each instance, AAMC either denies the request or limits the request with always the same response as provided to ▇▇ A.F. ▇▇. This forces the individual to retain counsel, spend additional funds to have their experts reiterate in writing what has already been provided to AAMC, delays the individuals in taking the MCAT and applying to medical school, and aggravates their pre-existing condition of anxiety disorder.

From a legal standpoint, AAMC is violating the Americans With Disability Act("ADA"). I have had the opportunity to speak with other attorneys throughout the country, and the conduct of AAMC seems to support a class action case. I suggest AAMC revisit its process in reviewing and thereafter rendering decisions as to providing accommodations to its applicants.

The opinion letters and the documentation my client has provided warrant that AAMC must accommodate my client and provide her the accommodation. If it refuses, AAMC will continue to discriminate against my client due to her disability as well as violating the ADA. Furthermore, the continued delays in determining her accommodation and/or the failure to accommodate her as demanded by her physicians will continue to cause irreparable harm to her because she will be unable to take the MCAT and apply to medical school.

Based upon the above, although the appeal process is thirty (30) days per your guidelines, I demand that AAMC provide the accommodation for ▇▇ A.F. ▇▇ as outlined by her

physicians and advise of the same within the next seven (7) days. My client cannot wait 30 days for the AAMC to review her appeal due to the need to schedule her MCAT with the accommodation and apply to medical school.  As already outlined above, AAMC discriminated against my client when it refused to provide the accommodation requested by her and her physicians.  Forcing her to wait another 30 days is unconscionable and will result in continued harm to her.   Rest assured, if AAMC fails to provide the accommodation within the next seven (7) days, I intend to proceed with a lawsuit and seek injunctive relief.

Very truly yours,

*/s/ David A. Goldstein*

David A. Goldstein

DAG/kls
Enclosure

# **<u>Exhibit K</u>**

**ADHD Specialists of Columbus**
*Specializing in the Diagnosis and Treatment of ADHD*
*Children, Adolescents and Adults*
William B. Benninger, Ph.D.
Tara L. Benninger, Ph.D.

130 Northwoods Blvd.
Columbus, Ohio  43235
Phone 614-888-ADHD (2343)
Fax 614-846-1849
Web: ADDvisor.com

**Name:** █████ A.F. █████
**Date:  January 2023**
**DOB:**████

**ADHD Medication at testing - None**

**ADULT**
**ADHD Evaluation**
**Summary of Test Results**
**Self-Report**

| ADHD Tests | Subtests | Marked | Mod | Mild | None |
|---|---|---|---|---|---|
| | **T Score** | **≥ 70** | **65-69** | **60-64** | **<60** |
| BAARS | Inattention | TS, SC | | | |
| | Hyperactivity | | TS | | SC |
| | Impulsivity | | TS, SC | | |
| | | | | | |
| CAARS | Inattention/Memory Problems | x | | | |
| | Hyperactivity/Restlessness | | x | | |
| | Impulsivity/Emotional Lability | | | x | |
| | DSM-5 Inattentive Symptoms | x | | | |
| | DSM-5 Hyperactive-Impulsive Symptoms | x | | | |
| | DSM-5 ADHD Symptoms Total | x | | | |
| | ADHD Index | x | | | |
| | | | | | |
| ADDES | Inattentive | x | | | |
| | Hyperactive/Impulsive | x | | | |
| | | | | | |
| BRIEF (EFI) | Inhibit | x | | | |
| | Working Memory | x | | | |
| | | | | | |
| BRIEF (Executive Function Impairments) | Shift          cognitive/practical | | | | x |
| | Emotional Control | | | | x |
| | Self-Monitor    cognitive/practical | | | x | |
| | Initiate | x | | | |
| | Plan/Organize | x | | | |
| | Task Monitor | x | | | |
| | Organization of Materials | x | | | |

TS = Total Score, SC = Symptom Count

09/2020

# ADHD Specialists of Columbus
*Specializing in the Diagnosis and Treatment of ADHD*
*Children, Adolescents and Adults*
William B. Benninger, Ph.D.
Tara L. Benninger, Ph.D.

*130 Northwoods Blvd.*
*Columbus, Ohio 43235*
*Phone 614-888-ADHD (2343)*
*Fax 614-846-1849*
*Web: ADDvisor.com*

**ADULT**
**ADHD Evaluation**
**Summary of Test Results**
**Observer Report**

| ADHD Tests | Subtests | Marked | Mod | Mild | None |
|---|---|---|---|---|---|
| | **T Score** | **≥ 70** | **65-69** | **60-64** | **<60** |
| BAARS | Inattention | | | TS | SC |
| | Different Total Symptoms (Self and Observer) | | | | 7* |
| | Hyperactivity | TS | SC | | |
| | Different Total Symptoms (Self and Observer) | | | | 4* |
| | Impulsivity | | | TS | SC |
| | Different Total Symptoms (Self and Observer) | | | | 3* |
| CAARS | Inattention/Memory Problems | x | | | |
| | Hyperactivity/Restlessness | x | | | |
| | Impulsivity/Emotional Lability | | x | | |
| | DSM-5 Inattentive Symptoms | | x | | |
| | DSM-5 Hyperactive-Impulsive Symptoms | x | | | |
| | DSM-5 ADHD Symptoms Total | x | | | |
| | ADHD Index | x | | | |
| ADDES | Inattentive | x | | | |
| | Hyperactive/Impulsive | x | | | |
| BRIEF (EFI) | Inhibit | | | x | |
| | Working Memory | | | x | |
| | | | | | |
| BRIEF (Executive Function Impairments) | Shift          cognitive/practical | | x | | |
| | Emotional Control | x | | | |
| | Self-Monitor      cognitive/practical | | | | x |
| | Initiate | | | | x |
| | Plan/Organize | | | x | |
| | Task Monitor | | | x | |
| | Organization of Materials | x | | | |

**TS = Total Score, SC = Symptom Count**
**\* denotes significant impairment**

09/2020

## ADHD Specialists of Columbus

*Specializing in the Diagnosis and Treatment of ADHD*
*Children, Adolescents and Adults*
William B. Benninger, Ph.D.
Tara L. Benninger, Ph.D.

*130 Northwoods Blvd.*
*Columbus, Ohio   43235*
*Phone 614-888-ADHD (2343)*
*Fax 614-846-1849*
*Web: ADDvisor.com*

**ADHD Evaluation**
**Summary of Test Results**
**OFFICE**

**Verbal IQ estimate   130**

| ADHD Tests | Subtests | Standard Score |
|---|---|---|
| WAIS-IV | **Verbal Short-Term Memory/** **Simple Verbal Working Memory** | |
| Wechsler Adult Intelligence Scale Fourth Edition | Digit Recall | **90\*** |

| ADHD Tests | Subtests | Standard Score |
|---|---|---|
| SB5 | **Verbal Working Memory/** **Complex Verbal Working Memory** | |
| Stanford-Binet Intelligence Scales Fifth Edition | Working Memory-Memory for Sentences | **90\*** |

\* denotes significant impairment

09/2020

## ADHD Specialists of Columbus
*Specializing in the Diagnosis and Treatment of ADHD*
*Children, Adolescents and Adults*
William B. Benninger, Ph.D.
Tara L. Benninger, Ph.D.

*130 Northwoods Blvd.*
*Columbus, Ohio  43235*
*Phone 614-888-ADHD (2343)*
*Fax 614-846-1849*
*Web: ADDvisor.com*

**ADULT**
**ADHD Evaluation**
**Summary of Test Results**

| IQ Screen | Subtests | Standard Score | Percentile |
|---|---|---|---|
| | | | |
| WAIS-IV | ***Verbal IQ Screen*** | | |
| | Similarities Subtest | | |
| | Vocabulary Subtest | 130 | 98 |

| LD Screen | Subtests | Standard Score | Percentile | Grade Equivalent |
|---|---|---|---|---|
| | | | | |
| Woodcock- | Math Calculation | | | |
| Johnson IV | Passage Comprehension | 108 | 71 | >17.9 |

| Reading Comprehension (WM specific) | Subtests | Standard Score | Percentile | Age Equivalent | Grade Equivalent |
|---|---|---|---|---|---|
| | | | | | |
| GORT-5 | Rate Score | 95 | 37 | >18.0 | 13.0 |
| | Accuracy Score | 125 | 95 | >18.0 | 13.0 |
| | Fluency Score | 105 | 63 | >18.0 | 13.0 |
| | Comprehension Score | **90\*^** | 25 | 16.3 | 11.0 |

\* denotes significant impairment   ^indicates impairment with remembering what is read

09/2020

# ADHD Specialists of Columbus

*Specializing in the Diagnosis and Treatment of ADHD*
*Children, Adolescents and Adults*
William B. Benninger, Ph.D.
Tara L. Benninger, Ph.D.

*130 Northwoods Blvd.*
*Columbus, Ohio  43235*
*Phone 614-888-ADHD (2343)*
*Fax 614-846-1849*
*Web: ADDvisor.com*

**ADULT**
**ADHD Evaluation**
**Summary of Non-ADHD Test Results**
**Self-Report**

| ADHD Tests | Subtests | Marked | Mod | Mild | None |
|------------|----------|--------|-----|------|------|
|            | T Score | > 70 | 65-69 | 60-64 | <60 |
| SCL-90-R | Somatization |  |  |  | x |
|          | Obsessive-Compulsive | x |  |  |  |
|          | Inadequacy, Self-Worth |  |  | x |  |
|          | Depression |  |  | x |  |
|          | Anxiety |  |  |  | x |

09/2020

**ADHD Specialists of Columbus**
*Specializing in the Diagnosis and Treatment of ADHD*
*Children, Adolescents and Adults*
William B. Benninger, Ph.D.
Tara L. Benninger, Ph.D.

*130 Northwoods Blvd.*
*Columbus, Ohio   43235*
*Phone 614-888-ADHD (2343)*
*Fax 614-846-1849*
*Web: ADDvisor.com*

**ADULT**
**ADHD Evaluation**
**Summary of Test Results**
**Other Significant Factors**

| ADHD | Yes | No | |
|---|---|---|---|
| 1.  Significant current impairments in **function** (day to day activity): | x | | |
| Cognitive                     *none / mild / **moderate** / severe* | | | |
| Social                     ***none** / mild / moderate / severe* | | | |
| Academic                     *none / mild / **moderate** / severe* | | | |
| Home/Community Functioning     *none / **mild** / moderate / severe* | | | |
| Occupational                     *none / mild / moderate / severe* | | | |

| | Yes | Possible | No |
|---|---|---|---|
| 2.  Some impairing symptoms before age 16 | x | | |
| 3.  Family history relevant to ADHD. *diagnosed / probable / possible* | x | | |
| 4.  History of relevant medical complications in pregnancy, delivery, infancy, child/adulthood *diagnosed / probable / possible* | | | x |

**Clinical Impressions** (From Clinical Interview and All Testing Data)

Rating Scales – results show significant inattentive, hyperactive and impulsive symptoms from both self and observer reports. Significantly impaired executive function symptoms evident from both self and observer reports include inhibit, working memory, plan organize, task monitor and organization of materials. Significantly impaired executive function symptoms evident from self-report include self-monitor and initiate. Significantly impaired executive function symptoms evident from observer report include shift and emotional control.

WMA (Working Memory Assessment) – simple verbal working memory and complex verbal working memory are significantly impaired on this test.

Clinical Data – no significant induced factors are present. Significant inheritable factors include a sister, brother, cousin and uncle who are all diagnosed with ADHD. Additional symptoms consistent with individuals diagnosed with ADHD include difficulty with all phases of homework completion in high school and college, fine motor difficulties (messy handwriting), minor behavioral difficulties in school (out of uniform, late), severe

difficulty persisting with uninteresting work, difficulty completing long-term projects (procrastination, plan/organize, overwhelmed), time judgment difficulties (often late, misjudges time, loses track of time), money management difficulties (impulsive spending, forgetful), driving problems (locking keys in car, one speeding ticket, parking tickets, car towed) and occasional difficulty self-regulating anger. In general, this individual indicates that she struggles to process information, is very disorganized, forgetful, misplaces and/or forgets important materials, has trouble sustaining her effort with uninteresting tasks and is inattentive.

Functional Data – moderate cognitive and academic difficulties and mild home/community functioning difficulties are evident.

## ADHD Specialists of Columbus
*Specializing in the Diagnosis and Treatment of ADHD*
*Children, Adolescents and Adults*
William B. Benninger, Ph.D.
Tara L. Benninger, Ph.D.

*130 Northwoods Blvd.*
*Columbus, Ohio 43235*
*Phone 614-888-ADHD (2343)*
*Fax 614-846-1849*
*Web: ADDvisor.com*

| Diagnostic Summary | Yes |
|---|---|
| 1. ADHD Predominantly Inattentive Presentation (314.00) | |
| 2. ADHD Predominantly Hyperactive-Impulsive Presentation (314.01) | |
| 3. ADHD Combined Presentation (314.01) | X |
| 4. Other Specified ADHD (314.01) | |
| 5. Unspecified ADHD (314.01) | |
| Current Severity of ADHD<br><br>1 2 3     4 **5** 6     7 8 9<br>*Mild*    *Moderate*    *Severe* | |
| 6. Does not meet diagnostic criteria for ADHD | |

### Comorbid/Coexisting Disorders

1. Other Specified Neurodevelopmental Disorder (315.8) Working Memory and Other Executive Function Impairments

2. Depressive Disorder (previously diagnosed)

3. Anxiety Disorder (previously diagnosed)

09/2020

## ADHD Specialists of Columbus

*Specializing in the Diagnosis and Treatment of ADHD*
*Children, Adolescents and Adults*
William B. Benninger, Ph.D.
Tara L. Benninger, Ph.D.

*130 Northwoods Blvd.*
*Columbus, Ohio   43235*
*Phone 614-888-ADHD (2343)*
*Fax 614-846-1849*
*Web: ADDvisor.com*

**Recommendations**

| | | | Start Dose |
|---|---|---|---|
| **1. Medications*:** | **Stimulants:** | Adhansia XR^ | 25 mg. |
| | | Concerta ^ | 18 mg |
| | | Cotempla XRODT^ | 8.6 mg |
| | | Jornay PM ^ | 20 mg |
| | *methylphenidate* | Ritalin LA | 10 mg |
| | | Metadate CD | 10 mg |
| | | Aptensio XR ^ | 10 mg |
| | | Daytrana (Patch) | 5 mg |
| | | Quillivant XR (liquid) ^ | 20 mg |
| | | Quillichew ER | 20 mg |
| | *dexmethylphenidate* | Focalin XR | 5 mg |

-------------------------------------------------------------------

| | | | |
|---|---|---|---|
| *mixed amphetamine salts* | Adderall XR | 5 mg |
| | Mydayis ^ | 12.5 mg. |
| *lisdexamfetamine* | Vyvanse | 10 mg. |
| | Vyvanse (chew) ^ | 10 mg. |
| *amphetamine* | Adzenys ER (liquid) | 1.25 mg |
| | Adzenys XR ODT | 3.1 mg |
| | Dyanavel XR (liquid)^ | 2.5 mg. |
| *dextroamphetamine* | Dexadrine ER | 5 mg |

-------------------------------------------------------------------

**Non-Stimulants:**

| | | |
|---|---|---|
| *atomoxetine* | Strattera^ | weight-based |
| *guanfacine* | Intuniv ^ | 1 mg |
| *clonidine* | Kapvay ^ | 0.1 mg |

**\*Suggest starting with a methylphenidate/dexmethylphenidate product due to lower incidence of side effects.**

**\*\*Research indicates advisability of starting at lowest dose and titrating upward every 7–10 days until benefit or side effect is realized.  If benefit is found, continuing to carefully titrate using standardized rating scales for precise feedback is recommended (can be completed in this office if desired).  In general, inattentive symptoms tend to respond better to lower doses, while hyperactive-impulsive symptoms tend to respond better to higher doses.**

**\*\*\* A genetic test that often decreases the guess work regarding which medication to prescribe is now available.  Ask your pediatrician or family doctor about the option of performing this test.**

**^  Longest lasting in the group - typically 12+ hours**

09/2020

ADHD Specialists of Columbus
*Specializing in the Diagnosis and Treatment of ADHD*
*Children, Adolescents and Adults*
William B. Benninger, Ph.D.
Tara L. Benninger, Ph.D.

*130 Northwoods Blvd.*
*Columbus, Ohio   43235*
*Phone 614-888-ADHD (2343)*
*Fax 614-846-1849*
*Web: ADDvisor.com*

## Recommendations

**2.** **Self-Education** – Research indicates that when individuals are well informed about all aspects of ADHD, the changes in their behavior result in significant benefits.
*Books* - Taking Charge of Adult ADHD-Barkley; More Attention, Less Deficit: Success Strategies for Adults with ADHD-Tuckman

**3.** **Cogmed Working Memory Training** - Through this office – Handouts supplied.
Cogmed Working Memory Training is the only non-medication, research-based intervention that provides reliable improvements for working memory, initiate, plan/organize and inattention symptoms.

**4.** **Educational Management/ Environmental Management** - Handouts supplied.
Many individuals/students receive significant benefit from academic accommodations in college and professional school. Environmental - Often used in conjunction with educational management interventions.  Environmental management can also provide significant benefits.

5. **Occupational Management** - ADHD and executive function impairments often significantly impair optimal work performance.  *Book* - The Smart but Scattered Guide to Success-Dawson

**6.** **Behavior Management** - Handout Supplied.  Behavioral interventions are impactful for a variety of behavioral difficulties including money management and driving. ADHD executive function coaching is the best way to *learn and implement* important and helpful strategies.  ADHD executive function coach - Tracy Lowrie, tlowrie2311@gmail.com or 614-537-3257.

**All highlighted above can be considered.**

**7.** **Other – MCAT ACCOMMODATIONS**

**This individual needs time and ½ (1.5x) on every section of MCAT**

This individual exhibits severe symptoms of inattention, working memory, initiate, plan/organize, organization of materials and task monitor.  These inattention, working memory and other executive function impairments significantly interfere with most phases of academic demands and significantly contribute to being easily distracted, having problems with focus, sustaining attention and remembering. As a result, accommodations are needed so that this individual will have sufficient time to read and reread questions and answers, have time to organize written responses and have time to check work to minimize errors caused by inattention, working memory, plan/organize and task monitor deficits.

09/2020

**How are effects of ADHD mediated by the recommended accommodation(s)**

The severe inattentive symptoms exhibited by this individual impair the ability to focus, concentrate and sustain attention with mentally demanding tasks for any significant length of time. As a result, the individual needs to take numerous "mental breaks" in order to reboot or refresh their ability to refocus. Because of this difficulty and the need for multiple "mental breaks" this individual takes much longer to complete typical tasks such as tests. In addition, because of the extreme mental effort required simply to obtain normal levels of concentration, without "mental breaks", this individual's ability to sustain their attention and effort over long periods of time is extremely difficult - unless they are able to take multiple "mental breaks".

The severe working memory impairment interferes with this individual's ability to hold information in mind for a significant enough period of time to use it. This difficulty (along with inattention) makes it extremely difficult for any individual to take sufficient notes in class. During test taking this means that an individual must read, reread and reread questions in order to remember it long enough to evaluate each of the possible answers. In addition, they may have to reread the various answer choices multiple times to evaluate them. If this individual even takes 30 seconds longer on each question than the typical test-taker, of a 100-question test, that test would take them an additional 50 minutes. A working memory impairment also contributes to distractibility which further undermines an individual's ability to focus and concentrate.

Finally, this individual exhibits a severe problem with the executive function of plan/organize, which is an individual's ability to organize information in one's head in order to speak or write in a logical and sequential manner. When this problem exists, it takes a person much longer to organize their thoughts in order to answer questions and/or get them on paper.

1. **Extended time** - will compensate for the working memory and inattentive symptoms documented in the testing and will compensate for the extra time a student needs due to their difficulty with sustaining attention with a mentally demanding task and therefore taking longer for those tasks. It will also help compensate for having to reread questions and answers multiple times due to a working memory deficit.

2. **Test taking in a quiet, distraction free environment** will compensate for the student's difficulty with staying on task and being easily distracted by extraneous stimuli.

William B. Benninger, Ph.D., Psychologist
Specializing in the Diagnosis and Treatment of ADHD
Former Adjunct Assistant Professor, The Ohio State University
PsyPact Interjurisdictional Approved Provider
Co-Founder, ADDvisor.com

ADHD Specialists of Columbus
*Specializing in the Diagnosis and Treatment of ADHD*
*Children, Adolescents and Adults*
William B. Benninger, Ph.D.
Tara L. Benninger, Ph.D.

*130 Northwoods Blvd.*
*Columbus, Ohio 43235*
*Phone 614-888-ADHD (2343)*
*Fax 614-846-1849*
*Web: ADDvisor.com*

**Addendum**
**Executive Functions**

| BRIEF | |
|---|---|
| | **Inhibit** - is similar to impulsivity and refers to an individual's ability to delay responding when appropriate. |
| | **Working Memory** - is your ability to hold something in mind long enough to use it, "remembering to do". It is the shortest form of memory and can be broken down into additional subcategories. |
| | **Shift** - **cognitive** difficulties here contribute to problem-solving issues and include having difficulty with getting stuck by trying to solve a problem over and over in a similar way. Giving up quickly with problem-solving is also seen.<br>        **practical** issues here include having difficulty/distress with unexpected changes of plans. |
| | **Emotional Control** - problems in this area don't mean that the person necessarily has "worse emotions" but this is more of a "heart on the sleeve" to measure. High scores in this category indicate that this person's emotions are rarely a secret. They may have trouble self-regulating emotion when necessary or important. |
| | **Initiate** - would indicate difficulty getting started on tasks, particularly when those tasks are not highly interesting. |
| | **Plan/Organize** - this is a mental plan/organize difficulty where the individual may have difficulty putting their thoughts together to explain something, getting their ideas on paper or planning ahead. |
| | **Organization of Materials** - this is difficulty with having the right "stuff", in the right place, at the right time. It includes losing and/or misplacing items. |
| | **Monitor - Task** - includes checking work, catching careless errors and doing the right task at the right time.<br>            **self** - **cognitive** - this difficulty is a problem-solving one where the individual may not monitor themselves in regard to completing cognitive tasks and therefore may run out of time or be unable to complete a task for this reason.<br><br>            **practical** - this difficulty may contribute to someone (for example) talking too loud in the library but without self-monitoring they would be the only ones that wouldn't notice and would need to be monitored/corrected by someone else. |

**Motivation -** not part of the **BRIEF** assessment (and an often-overlooked problem area) - problems in this area would include having significant difficulty making yourself do something that is not highly interesting.

09/2020

# Exhibit L

# ADHD Specialists of Columbus

*Specializing in the Diagnosis and Treatment of ADHD*
*Children, Adolescents and Adults*
William B. Benninger, Ph.D.
Tara L. Benninger, Ph.D.
130 B Northwoods Blvd., Columbus, Ohio 43235
phone (614) 888-2343 (ADHD) • fax (614) 846-1849

# Psychological Report
Confidential

Name: ▆▆▆▆ A.F. ▆▆▆▆
Date of Birth: ▆▆▆▆
Date of Assessment: January 2023

Examiner: William B Benninger, Ph.D.
Report Date: March 2023

**Tests Administered**
Clinical Interview
CAARS Self Report / Observer Report Long Version
BAARS-IV Self Report / Other Report: Current Symptoms
Behavior Rating Inventory of Executive Function - Adult Version Self Report Form/Informant
Report Form
ADDES Scales - Self-Report Version / Home Version
Wechsler Adult Intelligence Scale-IV (Vocabulary)
Stanford-Binet Intelligence Scales, Fifth Edition (Working Memory – Memory for Sentences)
Woodcock Johnson Tests of Achievement IV (Passage Comprehension)
Gray Oral Reading Test-5 (GORT-5)
Symptom Checklist-90-Revised

**History**
No significant induced factors are present. Significant inheritable factors include a sister, brother, cousin, and uncle who are all diagnosed with ADHD. This individual has exhibited significant impairment in all phases of homework completion in high school and college and has historically had severe difficulty persisting with uninteresting work and completing long-term projects. Time judgment difficulties are chronic.

**Clinical/Diagnostic Information**
Additional symptoms consistent with individuals diagnosed with ADHD include difficulty with all phases of homework completion in high school and college, fine motor difficulties (messy handwriting), minor behavioral difficulties in school (out of uniform, late), severe difficulty persisting with uninteresting work, difficulty completing long-term projects (procrastination, plan/ organize, overwhelmed), time judgment difficulties (often late, misjudges time, loses track

of time), money management difficulties (impulsive spending, forgetful), driving problems (locking keys in car, one speeding ticket, parking tickets, car towed) and occasional difficulty self-regulating anger. In general, this individual indicates that she struggles to process information, is very disorganized, forgetful, misplaces and/or forgets important materials, has trouble sustaining her effort with uninteresting tasks and is inattentive.

**Exhibits the following DSM-IV ADHD Inattentive symptoms to a clinically significant degree:**
Inattention
1. Fails to give close attention to details or makes careless mistakes in work or other activities
2. Doesn't follow through on instructions and fails to finish work or chores
3. Has difficulty organizing tasks and activities
4. Avoids, dislikes or is reluctant to engage in tasks that require sustained mental effort
5. Loses things necessary for tasks or activities
6. His easily distracted by extraneous stimuli or irrelevant thoughts
7. His forgetful in daily activities

This individual meets symptom count criteria for Inattention, Hyperactivity and Impulsivity.

**Test Results**
***Behavior Rating Inventory of Executive Function-Informant/Self-Report Form (BRIEF)***

| Scales | Informant Form T-Score | Self-Report Form T-Score |
|---|---|---|
| Inhibit | 63* | 77* |
| Shift | 65* | 56 |
| Emotional Control | 73* | 54 |
| Self Monitor | 58 | 63* |
| Initiate | 57 | 73* |
| Working Memory | 64* | 89* |
| Plan/Organize | 63* | 78* |
| Task Monitor | 61* | 81* |
| Organization of Materials | 75* | 78* |
| BRI | 68* | 64* |
| MI | 66* | 85* |
| GEC | 68* | 78* |

***CAARS Self Report/Observer Report Long Version***

| Scale | Observer Form T-Score | Self-Report Form T-Score |
|---|---|---|
| Inattention/Memory Problems | 74* | 86* |
| Hyperactive/Restlessness | 72* | 67* |
| Impulsivity/Emotional Lability | 67* | 60* |
| DSM-V Inattentive Symptoms | 66* | 83* |
| DSM-V Hyperactive-Impulsive Symptoms | 71* | 71* |
| DSH-V ADHD Symptoms Total | 71* | 81* |
| ADHD Index | 82* | 70* |

***BAARS-IV Self Report/Other Report: Current Symptoms***

| Scale | Other Report<br>T-Score | Self Report<br>T-Score |
|---|---|---|
| Inattention | 64* | 75* |
| Hyperactivity | 71* | 65* |
| Impulsivity | 64* | 68* |

***ADDES Scales – Self-Report Version/Home Version***

| Scale | Home Version<br>T-Score | Self Report Version<br>T-Score |
|---|---|---|
| Inattentive | 73* | 80+* |
| Hyperactive-Impulsive | 70* | 80* |

***Symptom Checklist-90-Revised***

| | Standard Scores |
|---|---|
| Somatization | 41 |
| Obsessive-Compulsive | 73^ |
| Inadequacy, Self-Worth | 64* |
| Depression | 63* - mild controlled with medication |
| Anxiety | 57 |

^ due to having numerous **functional** routines to compensate for ADHD symptoms

***Wechsler Adult Intelligence Scale-IV (Vocabulary)***

| | Raw Score | Standard Score |
|---|---|---|
| Vocabulary | 16 | 130 |

***Wechsler Adult Intelligence Scale-IV (Digit Recall)***

| Verbal Short-Term Memory/Simple Verbal Working Memory | |
|---|---|
| Digit Recall | 90*^ |

***Stanford-Binet Intelligence Scales***

| | Standard Score |
|---|---|
| Working Memory-Memory for Sentences | 90*^ |
| Complex Verbal Working Memory | |

^Impaired due to >2.0 Standard Deviations from the Verbal IQ estimate

***Woodcock Johnson Tests of Achievement-IV***
***(Passage Comprehension)***

| | Raw Score | Standard Score |
|---|---|---|
| Passage Comprehension | 47 | 108 |

### *Gray Oral Reading Tests-4 (GORT-4)*

|                     | Raw Score | Standard Score | Percentile | Grade Equivalent |
|---------------------|-----------|----------------|------------|------------------|
| Rate Score          | 9         | 95             | 37         | 13.0             |
| Accuracy Score      | 15        | 125            | 95         | 13.0             |
| Fluency Score       | 11        | 105            | 63         | 13.0             |
| Comprehension Score | 8         | 90*^           | 25         | 11.0             |

\* denotes significant impairment
^this a practical working memory score and is impaired due to its >2.0 Standard Deviations from the IQ estimate

**Diagnosis**

<u>Axis I</u> – ADHD Combined Presentation (314.01) moderate severity
       -Other Specified Neurodevelopmental Disorder (315.8) Working Memory and Other Executive Function Impairments
       -Depressive Disorder (previously diagnosed)
       -Anxiety Disorder (previously diagnosed)

<u>Axis II</u> - None
<u>Axis III</u>- None

**Discussion**
This individual exhibits severe symptoms of inattention, working memory, initiate, plan/organize, organization of materials and task monitor. These inattention, working memory and other executive function impairments significantly interfere with most phases of academic demands and significantly contribute to being easily distracted, having problems with focus, sustaining attention and remembering. As a result, accommodations are needed so that this individual will have sufficient time to read and reread questions and answers, have time to organize written responses and have time to check work to minimize errors caused by inattention, working memory, plan/organize and task monitor deficits.

**How are effects of ADHD mediated by the recommended accommodation(s)**
The severe inattentive symptoms exhibited by this individual impair the ability to focus, concentrate and sustain attention with mentally demanding tasks for any significant length of time. As a result, the individual needs to take numerous "mental breaks" in order to reboot or refresh their ability to refocus. Because of this difficulty and the need for multiple "mental breaks" this individual takes much longer to complete typical tasks such as tests. In addition, because of the extreme mental effort required simply to obtain normal levels of concentration, without "mental breaks," this individual's ability to sustain their attention and effort over long periods of time is extremely difficult - unless they are able to take multiple "mental breaks".

The severe working memory impairment interferes with this individual's ability to hold information in mind for a significant enough period of time to use it. This difficulty (along with

inattention) makes it extremely difficult for any individual to take sufficient notes in class. During test taking this means that an individual must read, reread, and reread questions in order to remember them long enough to evaluate each of the possible answers. In addition, they may have to reread the various answer choices multiple times to evaluate them. If this individual even takes 30 seconds longer on each question than the typical test-taker, of a 100-question test, that test would take them an additional 50 minutes. A working memory impairment also contributes to distractibility which further undermines an individual's ability to focus and concentrate.

Finally, this individual exhibits a severe problem with the executive function of plan/organize, which is an individual's ability to organize information in one's head in order to speak or write in a logical and sequential manner. When this problem exists, it takes a person much longer to organize their thoughts in order to answer questions and/or get them on paper.

**Recommendations for Accommodations**

Based on the findings in this report this individual fully qualifies for accommodations on the MCAT.

Also, while the breaks previously allowed are important, they will not fully compensate for her disability. So, obviously extra time is needed.

1. Extended time - will compensate for the working memory and inattentive symptoms documented in the testing and will compensate for the extra time a student needs due to their difficulty with sustaining attention with a mentally demanding task and therefore taking longer for those tasks. It will also help compensate for having to reread questions and answers multiple times due to a working memory deficit.

2. Test taking in a quiet, distraction free environment will compensate for the student's difficulty with staying on task and being easily distracted by extraneous stimuli.


William B. Benninger, Ph.D., Psychologist
Specializing in the Diagnosis and Treatment of ADHD
Former Adjunct Assistant Professor, The Ohio State University
PsyPact Interjurisdictional Approved Provider
Co-Founder ADDvisor.com

# **Exhibit M**



ACT | TESTS & PREP | SCORES | PLANS | A.F.

superscore.

MyReports

## February 2018

**Not for official use.** Please choose "Send this Score" for an authorized transcript.

| 28 | 34 | 25 | 32 | 21 | 8 |
|---|---|---|---|---|---|
| Composite | Math | Science | English | Reading | Writing |

What is Composite Score?
Writing score information.

Send this Score

My Score Details | How do I Compare? | Am I Ready for College? | My Interests

### What's Next?

Preparation can lead to progress! The more you study and prepare the more likely you are to improve your scores. Click on the "what can I do to improve" button for official ACT resources. You can also check out our Ideas for Progress for some activities that can lead to improvement.

Typical Composite Score of a Retest

What can I do to improve?

ACT | TESTS & PREP | SCORES | PLANS | A.F.

from that test. By sending a superscore, the college or agency will receive all the scores from every test event represented in the superscore.

MyReports

## April 2018

**Not for official use.** Please choose "Send this Score" for an authorized transcript.

| 30 | 33 | 31 | 35 | 22 | 8 |
|---|---|---|---|---|---|
| Composite | Math | Science | English | Reading | Writing |

Score Graph

What is Composite Score?
Writing score information.

Send this Score

My Score Details | How do I Compare? | Am I Ready for College? | My Interests

February 2018

### What's Next?

Preparation can lead to progress! The more you study and prepare the more likely you are to improve your scores. Click on the "what can I do to improve" button for official ACT resources. You can also check out our Ideas for Progress for some activities that can lead to improvement.

Typical Composite Score of a Retest

What can I do to improve?

# **Exhibit N**

Allyson G. Harrison, Ph.D., C.Psych
234 Willingdon Ave
Kingston, Ont.

March 30, 2023

Dr. Kathryn Bugbee, Ph.D.
AAMC, MCAT Program
655 K St NW
Washington, DC

<u>Re: Appeal by Ms. ███ A.F. ███</u>

Dear Dr. Bugbee:

Thank you for your request that I review the documentation provided by █A.F.█ ████ in support of her appeal of accommodation.

She was first diagnosed with ADHD in October 2022. Prior to this, it appears that she was given accommodations at Duke University at least as early as April 2021, although the basis for these earlier accommodations is not clear. Her psychiatric physician extender reportedly determined in October of 2022 that her client met the diagnostic criteria for ADHD based on interview and completion of questionnaires. Her client is also said to have a history of Generalized Anxiety and difficulty with emotional regulation. Despite this diagnosis, psychiatric physician extender notes that there is minimal documentation of dysfunction in academics during ██ A.F. ██'s childhood.

██ A.F. ██ asserts that she has struggled to process information since her youth, and that hyperactivity, impulsivity and inattention have plagued her all her life. Although she was diagnosed with an anxiety disorder in high school, she feels that her anxiety was actually due to undiagnosed ADHD. Dr. Benninger's report also suggests that ██ A.F. ██ has many Obsessive-Compulsive symptoms. She acknowledges doing well academically in high school but feels this is because her school did not often use pressured time conditions. Nevertheless she says that she scored below average in the class when required to take standardized tests (although specific classes are not identified). Reportedly, during her standardized testing she found it difficult to read the words on the page and claims she never finished the sections on time, especially sections like the reading and science sections of the ACT, as they included passage-based questions.

She says she struggled with test-taking in college, giving an example of a second year biology class where she fixated on a single problem for over 30 minutes and as a result left half of the test blank.

In her initial application, she requested 50% extra test time and a separate room in which to write. Reportedly, AAMC offered her only 60 minutes per hour of flexible breaks.

███ A.F. ███ and her lawyer now argue that she must have her requested accommodations due to her diagnosed conditions, stating provision of 60 minutes of flexible break time is not sufficient. Based on her Other specified neurodevelopmental disorder, ADHD, working memory and other executive functioning impairments, and anxiety disorder, Mr. Goldstein argues that his client must be provided with extended test-taking time and a quiet, distraction-free location in which to write. ███ A.F. ███ says that without these accommodations she will not be able to show medical schools her full potential.

When taking practice MCATs she says that she is not able to finish all of the Critical Analysis and Reasoning section (and other sections, too).  Without 50% extra time, she predicts that she will not be able to finish the high pressure timed MCAT and her score will not reflect her true abilities.

Until April of 2021, she had never previously been provided with any formal extra time accommodations (or academic accommodations of any sort). She completed high school and her first two years at Duke University without formal accommodations, and wrote the ACT and her AP exams without accommodations.

Analysis of information provided

In order to qualify for accommodations as a person with a disability, two things must be demonstrated. First, one must provide evidence that the individual actually meets all of the diagnostic criteria for a given disorder. This, however, is not sufficient. Simply having a diagnosis of a disorder does not guarantee provision of accommodations; one must also demonstrate how the disorder causes functional impairments that substantially interfere with the individual's ability to participate equally on a test such as the MCAT.

In carefully reviewing this file, it is not at all clear that she met all of the DSM-5 criteria for diagnosis of ADHD-Combined Type, that she has normative deficits in auditory working memory, or real-world deficits in executive functioning. The report does not formally diagnose an Anxiety disorder.

However, even if it were demonstrated conclusively that this young woman did meet the diagnostic criteria for a disorder of some type, a diagnosis in and of itself is not sufficient evidence of the need for accommodation. DSM-5 is very clear in stating that a diagnosis of a disorder is not proof that the individual meets the legal standard for a disability. Indeed, on pg. 25 of the DSM-5 it says "In most situations, the clinical diagnosis of a DSM-5 disorder does not

imply than an individual with such a condition meets legal criteria for the presence of a disability...Additional information is usually required beyond that contained in the DSM-5 diagnosis, which might include information about the individual's functional impairments and how these impairments affect the particular abilities in question.... assignment of a particular diagnosis does not imply a specific level of impairment or disability." As such, evidence must also be provided showing how her functional impairments substantially interfere with equal participation on timed evaluations such as the MCAT.

[A.F.] underwent a psychological assessment in January of 2023 for the express purpose of documenting her need for accommodations on the MCAT. She completed all tests when not on medication. While this is useful when determining the presence of a condition, it does not allow AAMC to determine how she will perform on the date of testing, when she will be taking her medications as prescribed.

The psychologist who diagnosed her with ADHD in 2023 has not, however, demonstrated that [A.F.] is substantially impaired in her ability to participate equally on the MCAT. He suggests that his client is impaired in a number of areas, but bases this on self-reported symptoms of ADHD and Executive functioning (the BRIEF) and on relatively lower (but still average) scores on a few unrelated subtests. However, research has shown that self-reported ADHD symptoms are minimally correlated with actual real-world functional impairment. Similarly, research also shows that scores on the BRIEF are only weakly associated with actual executive functioning problems in real-life. In other words, endorsement of symptoms is not proof of actual functional impairment in real-life activities.

This psychologist suggests that his clients estimated IQ is 130 based on one subtest from the WAIS-IV (Vocabulary). In point of fact, the WAIS-IV technical manual demonstrates that there is only a .72 correlation between obtained score on Vocabulary and full scale IQ, meaning that this one subtest is not a perfect proxy for overall intelligence. Similarly, Digit Span is correlated only .64 with full scale IQ. Furthermore, the manual explains that there is a low correlation between most people's Vocabulary score and their overall working memory ability (.36). Hence, the fact that [A.F.] performed less well on "Digit Recall" (which is not actually a WAIS subtest) is common; her reported score of 90 on this subscale is still within the normal or average range, as is her score on the memory for sentences subtest of the SB5. Many normal, nondisabled individuals have significant differences between their WAIS Vocabulary score on scores on these individual working memory subtests. Finally, the two subtests that are said to demonstrate significant impairment (Digit recall and memory for sentences) are measures of auditory working memory (testing immediate recall of information you hear without being able to see the information or write it down), something that is not evaluated or required on the MCAT.

Dr. Benninger gave ▮▮▮A.F.▮▮▮ one untimed measure of academic achievement, the passage comprehension subtest of the WJ-IV, on which she obtained an average score. He then gave the Gray Oral Reading test, where she also scored in the average range. Again, given that this is an oral reading test and the MCAT is a silent reading test, it is difficult to understand how average performance on an oral reading measure would predict performance on the MCAT.

On a brief psychological screening measure, ▮▮▮A.F.▮▮▮ denied currently experiencing any Anxiety symptoms. Instead, she reported extremely high levels of Obsessive-Compulsive symptoms as well as mild (subclinical) symptoms of inadequacy and depression.

While Dr. Benninger may have demonstrated that his client self-reports high symptoms of ADHD (at levels that have been associated with possible symptom overreporting), there is only a weak correlation between self-reported symptoms of ADHD and actual functional impairment. Dr. Benninger recommends the need for extra time due to her auditory working memory symptoms (although she performed in the average range) and inattentive symptoms. Inattention, however, has not been demonstrated as requiring extra test-taking time, but rather provision of a quiet space and extra breaks.

In order to better understand how her lifelong symptoms may have interfered with her academic performance we must therefore examine her past academic and test-taking history. By history alone, I cannot see how she has been impaired in her academic functioning or ability to participate equally on timed evaluations. She acknowledges that she did well in high school, graduating in the top 10% of her class. She attributes her success to the fact that her high school did not often have strict time limits on tests. However, even if this is accurate, there would still have been strict time limits placed on her in her AP classes and when writing the AP exams.

Her marks in the 15 high school AP classes she took were almost exclusively A or A+, with her lowest mark being an 88% in AP English Language and Comp XII and her highest being AP Physics C: Mechanics in which she earned 100%. These marks were all achieved without provision of extra time accommodations.

She was also awarded six AP credits (maximum allowed by Duke). The requirements for AP credits is that, in most cases, the student must have achieved a 5/5 (or in some cases 4 or 5/5) on the timed AP exams for each subject, something relatively few students can achieve. As such, when she had to write the timed AP exams without any extra time accommodation she was able to perform extremely well relative to most other people who took these exams.

▮▮▮A.F.▮▮▮ suggested that she never did well on standardized exams, citing significant problems she had on the reading and science sections of the ACT; however, her overall score on the ACT exams (written in February and April of

2018 when she was a Junior) were better than 89% and 93%, respectively, of college-bound seniors who took this test. Her reading scores were better than 57% and 63% of college-bound Seniors, and her science scores were better than 83% and 95% of college-bound Seniors, respectively. It is difficult to characterize this performance as demonstrating inability to participate equally, especially when she took the ACT during the spring term of her Junior year of high school and her performance was being compared with college-bound Seniors.

Prior to receiving accommodations at Duke University, she achieved all A's in her first semester and was on the Dean's list with distinction. In the spring term she again received all As (she chose to be graded as pass/fail in one course, which she passed). Her fall term marks were also all As (with one pass in a research practicum). Her cumulative GPA to that point was a perfect 4.0. All of these marks were obtained without extra time accommodation. As such, it is difficult to see how any of her reported symptoms have chronically interfered with her academic performance or equal test-taking abiltiy.


Conclusion

The purpose of accommodation is not to ensure that an individual is able to perform to the best of her ability, finish every question, or gain entry into a professional program. It is simply to ensure that the impairments that flow from a particular disability do not interfere with the individual's equal participation in an activity such as test taking. This is determined relative to most other people in the general population.

████ A.F. ████ has previously been diagnosed with mental health disorders, and diagnosed more recently (2023) with an Other specified neurodevelopmental disorder, ADHD, and working memory and other executive functioning impairments. While I disagree that functional impairment has been demonstrated based on the self-reports and average performance on the single subtests administered by Dr. Benniger, ████ A.F. ████'s history fails to demonstrate that the symptoms arising from any or all of these diagnosed conditions have either chronically or significantly interfered with her equal test-taking ability. Compared to the general population she has always performed at or above average even when taking tests under time limits, and data from her 2023 assessment fails to support that she is impaired in her actual reading or test-taking skills relative to most other people in the general population. It is therefore difficult to conclude that she requires extra time in order to participate equally when taking the MCAT.

Research has failed to support that those with even severe anxiety symptoms require extra time in order to access or retrieve information when under time limits. Similarly, research has failed to support the need for extra test-taking time to compensate for symptoms of ADHD. Even college students with well-documented reading impairments require only 25% extra time in order to have

equal access to timed tests. Hence, I do not feel that her documentation supports her need for 50% extra test-taking time. While this candidate may indeed have symptoms of ADHD, it does not necessarily follow that she requires extra test-taking time to participate equally on the MCAT. Her conditions may require her to take stop-the-clock breaks in order to calm down, refresh her attentional resources, manage her anxiety and hyperactivity, and employ learned strategies to cope with negative cognitions, but I cannot see that her actual, real-world performance on timed exams supports the need for extra test-taking time.

I trust that the information in this review will assist you in determining how best to deal with this request for reconsideration.

Yours truly,

Allyson G. Harrison, Ph.D.,C.Psych.

# **Exhibit O**

# Joseph E. Bernier, Ph.D.

Consulting and Clinical Psychology
Licensed Psychologist

josephebernier@gmail.com
(518-573-5964)

**CONFIDENTIAL**
March 18, 2023

Kathryn Bugbee, PhD
Director, MCT Accommodation Services
Association of American Medical Colleges
655 K Street, NW
Washington, DC 20001-2399

Re: ██████ A.F. ██████

Dear Dr. Bugbee,

This examinee has requested that she be reconsidered for 50% extended test time and a separate room for the *Medical College Admissions Test*. I have been asked to review her request.

My review is based on the *MCAT* accommodations request form and personal statements; a letter from her attorney, David Goldstein, dated March 4, 2023; a 2023 psychological evaluation performed by William Benninger, PhD and an addendum to the evaluation, the last dated March 2023; letters from a treating physician's assistant, Pamela Campbell, dated November 14, 2022 and December 23, 2022; ACT score reports for February 2018 and April 2018 examinations; verification of college accommodations in 2021 and 2022; college transcript 2019-2022; and private high school transcript 2015-2018.

Based on the information available it appears that *American Association of Medical Colleges* has approved the examinee for sixty minutes of stop-the-clock breaks to be taken as needed. She has asked that they reconsider their denial of her earlier request for 50% additional time to answer test items and a separate room. Upon review, in my opinion the documentation that she provided does not sufficiently support her need for extended testing time.

The examinee submitted a letter from her attorney and an addendum to a psychological evaluation to support her current request. These two documents provide no new facts. Her attorney states that the *determining* factor is what her doctors recommend. The psychologist articulates a rationale for granting her time and one-half and a separate room. Again, neither provide any new facts.

There is no evidence that the candidate has been an impaired learner as compared to the general population. The transcripts show that despite her difficulties she was a straight-A student in high

school without a formal accommodations plan. Her cumulative grade point average in college was 4.0 before she was approved for accommodations -time and one-half for course examinations and rest breaks without penalty. She continued to be an outstanding student with these accommodations. The academic documents suggest that although she may have had to work harder than many of her peers to achieve the level of success reflected in the record, her mental disorders did not put her at a significant disadvantage as compared to the general public.

The standardized testing records do not indicate impaired access to test content because of any cognitive processing difficulties. I am referring to the examinee's performances on the *ACT* college admissions examination -an examination that compared her to other college-bound students, not to the general population. Given her diagnoses it is reasonable to assume that she was symptomatic at the time she took the examinations. She received no accommodations, and despite her impairments her composite scores were above average -in fact in the top 12 percent of those taking the examination. The subject area scores were average and above average, and some were in the upper extreme of performance. The *ACT* takes about 2 hours and 55 minutes to complete, excluding breaks. The implication: there is no apparent history of the examinee being substantially limited in her ability to perform the cognitive functions relative to accessing a standardized examination like the *Medical College Admissions Test.*

In his addendum, Dr. Benninger argued for extended test time and a distraction-free room. He noted that the extra test time "*will compensate for the working memory and inattentive symptoms documented in the testing and will compensate for the extra time a student needs due to their difficulty with sustaining attention with a mentally demanding task and therefore taking longer for those tasks. It will also help to compensate for having to reread questions and answers multiple times due to working memory deficit*". He noted that a quiet room "*will compensate for the student's difficulty with staying on task and being easily distracted by extraneous stimuli*".

Dr. Benninger did not conduct a comprehensive assessment of cognitive performance. The cognitive performance testing consisted of the vocabulary and digit recall subtests from the *WAIS-IV,* and the memory for sentences subtest from the *Stanford-Binet-5*. Single subtests generally provide poor construct coverage or measurement, and the interpretations, diagnoses, and predictions based on single subtests is questionable practice. Dr. Benninger used a significant variation between the examinee's extremely high vocabulary score and her average performance on other cognitive measures as the basis for documenting impaired functioning. Variability in test score profiles is commonplace, and areas of relative personal strengths and weakness are to be expected. Dr. Benninger's determination of impaired functioning is based on the internal referent of the candidate herself rather than the external referent of the general population. In truth, performance on the cognitive tests of working memory were within one standard deviation of the mean -average compared to others of the same age. The doctor's description of severe impairment is misleading. This cognitive battery did not adequately measure complex cognitive processing or reasoning and executive functioning to support any claims in this regard. Dr. Benninger also administered reading tests, specifically passage comprehension from the *WJ-IV* and the *Gray Oral Reading Test-5*. Passage comprehension on the *Woodcock* was average, as was passage comprehension on the oral reading test. Dr. Benninger referred to the *GORT* passage comprehension subtest as a marker of working memory. Although this reading subtest is a recognized and accepted measure of comprehension, it is influenced by working memory. Still the

examinee scored within the average range on this measure as compared to the general population. It is important to recognize that the demands of the oral reading comprehension test are very different than the reading required on the admissions examination where the examinee is allowed to refer back to the text (which is not the case with the *GORT-5* measure). Ultimately, Dr. Benninger did not effectively support his explanation for why extra time is needed with any objective evidence found in his assessment, nor with historical evidence found on standardized examinations whose task demands are similar to those of the *Medical College Admissions Test*.

In the end, the documentation that has been provided does not support the request for fifty percent additional test time. Sixty minutes of stop the clock breaks as previously approved, and a low distraction test setting appear to be appropriate modifications.

*Joseph E. Bernier, Ph.D.*
Joseph E. Bernier, Ph.D.
Licensed Psychologist

# **Exhibit P**



# MCAT Accommodations Services

**AAMC ID:** ███████
**Status: Partial Approval**
**Accommodations Expire: End of testing year 2024**

3/31/2023

Dear ███████ A.F. ███████ :

Your request for reconsideration has been approved for the following accommodations:

- Separate testing

This is in addition to your previously approved accommodation(s):

- Stop the clock breaks: 60 minutes of flexible break time

We have reviewed your application and considered the recommendations of your qualified professional as well as your history of accommodations. However, the available documentation does not provide sufficient evidence of functional limitation to support some of your request. Here is what we couldn't approve and why:

We have carefully reviewed the supplemental information that you provided from Dr. Benninger as well as his original 2023 assessment. The assessment completed by Dr. Benninger shows average and above-average functioning and does not show a pattern of normative impairment that can be described as substantially limited relative to most people. His characterization of the identified weakness as "severe" is not supported by the average scores that were demonstrated. We also note that his testing consisted of single subtests or select measures rather than a comprehensive assessment of cognitive and academic functioning, and that certain of the areas of functioning that he identified as being impaired (digit recall and memory for sentences) are measures of auditory working memory (testing immediate recall of information you hear without being able to see the information or write it down), something that is not evaluated or required on the MCAT exam.

We also considered, again, your academic history and your use of or need for accommodations in real-world settings. A review of your academic record with and without accommodations, lack of history of accommodations in settings similar testing situations (i.e., timed standardized tests like the ACT), and other supporting documentation does not show a pattern of normative impairment (substantial limitation compared to most people) consistent with the need for additional testing time. Your records document the relatively recent diagnosis of two neurodevelopment disorders, ADHD and other specified neurodevelopmental disorder, along with anxiety. No documentation was submitted reflecting a history of functional limitations or academic difficulties or the receipt of extra help or intervention earlier in your academic career, as would be expected for such neurodevelopmental disorders. You have no history of formal accommodation until 2021 in college. You have an above-average academic record in high school and college prior to the initiation of accommodations – indeed, a stellar academic record. Your standardized test history (e.g., your AP exams and the ACT), which demonstrates your ability to access material in a testing environment like the MCAT exam, shows that you scored in the average and above range without accommodations.

Because the additional information submitted with your reconsideration request, when considered with the previously submitted documentation, does not provide sufficient support for the need for extended testing time, we cannot approve your request for 50% additional testing time. The previously approved accommodation continues to be available as indicated. In addition, based upon your evaluator, Dr. Benninger's, recommendation that you be permitted to test in a quiet, distraction-free environment, you are also approved to test in a separate room.

MCAT® is a program of the Association of American Medical Colleges

The Association of American Medical Colleges is committed to providing appropriate accommodations to individuals with disabilities as defined by relevant federal law.



We hope that this helps you understand the rationale for our determination. Be assured that your application materials have been treated with due respect, fairness, and confidentiality. For more information about the review process, see "**Understanding the Clinical Review Process**" on our website. Please review the information on the following pages regarding next steps in the accommodations process.

Sincerely,

MCAT Accommodation Services
**accommodations@aamc.org**
**www.aamc.org/mcat/accommodations**

MCAT® is a program of the Association of American Medical Colleges

The Association of American Medical Colleges is committed to providing appropriate accommodations to individuals with disabilities as defined by relevant federal law.



## Finish the process…

**Read the following inserts for instructions:**

- **I've Been Approved, What's Next?**
- **What Can I Expect When I Arrive at the Test Center?**

## Determination questions?

- **Contact us at accommodations@aamc.org.**
- **Your evaluators can contact us, but don't forget to submit a release form using the Service Request function within the MCAT Accommodations Online system.**

## Requesting re-review

- **If you feel you still need an accommodation that was not approved or have additional documents to submit, you may seek a re-review of your request. For more information see the "What Are My Options for a Re-review?" insert.**

## Preparation resources

- **Visit the MCAT Official Prep Hub to learn more about accommodations for practice tests.**

**Please note that the 2023 testing year ends on September 9, 2023; see our website for all applicable time guidelines.**

MCAT® is a program of the Association of American Medical Colleges

The Association of American Medical Colleges is committed to providing appropriate accommodations to individuals with disabilities as defined by relevant federal law.