IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| A.F., | : | CASE NO.: 2:23-cv-01241 |
| | : | |
| Plaintiff, | : | JUDGE SARGUS |
| | : | |
| vs. | : | MAGISTRATE JUDGE |
| | : | |
| ASSOCIATION OF AMERICAN MEDICAL COLLEGES | : : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF A.F.'S REPLY BRIEF IN SUPPORT OF HER MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION**

Now comes Plaintiff, A.F. by and through her counsel David A. Goldstein Co., L.P.A., and hereby provides her Reply Brief in Support of a Temporary Restraining order and/or a Preliminary Injunction against Defendant precluding its refusal to provide an additional 50%-time ("extra time") accommodation for the MCAT test. A Memorandum in Support is attached hereto and incorporated herein.

Respectfully submitted,

*/s/ David A. Goldstein*
**DAVID A. GOLDSTEIN (0064461)**
DAVID A. GOLDSTEIN CO., L.P.A.
511 South High Street, Suite 200
Columbus, Ohio 43215
(614) 222-1889
(614) 222-1899 (Fax)
E-mail: dgoldstein@dgoldsteinlaw.com
*Trial Attorney for Plaintiff A.F.*

**MEMORANDUM IN OPPOSITION**

**I.     Preliminary Statement**

This case involves the overwhelming and unfettered power Defendant Association of American Medical Colleges ("AAMC") has over individuals who seek to pursue a career in medicine yet suffer from a disability that under the law requires AAMC to provide accommodations for the Medical College Admission Test ("MCAT").

Any individual who seeks to apply to a medical school in the United States is at the mercy of AAMC. AAMC administers the MCAT, a standardized test that medical schools heavily rely upon in deciding whom they will admit to their program. Decl. of A.F., ("A.F. Decl" Ex. A hereto filed as Doc. #19-1, and Ex.1, Bugbee Decl., Doc # 12-1). AAMC controls all aspects of the MCAT, including determining whether an applicant would be entitled to accommodations based on his or her disabilities as defined by the Americans with Disabilities Act. (Bugbee Decl.) What information to provide to AAMC to support an applicant's accommodation request is very vague and nonspecific. (A.F. Decl. and *See* https://students-residents.aamc.org/mcat-exam-accommodations/mcat-exam-accommodations). The review process by AAMC to determine whether an applicant is entitled to any accommodation is even more vague and arbitrary and typically contrary to the information it represents to applicants on its website.

Furthermore, to apply to a medical school in the United States, applicants must use the AAMC's centralized application processing service. AAMC collects, verifies, and delivers application information and MCAT exam scores to each school an applicant applies to. (A.F Decl.)

1

A.F. is a gifted young woman who has been diagnosed by licensed medical doctors in the State of Ohio with multiple disorders, including Other Specified Neurodevelopmental Disorders, ADHD, Working Memory, and Other Executive Function Impairments, Depression and Anxiety Disorder ("Disorders"). Decl. of William Benninger ("Benninger Decl." Ex. B hereto filed as Doc. # 19-2,and Decl. of Dr. Kathleen Costlow ("Costlow Decl." Ex. C hereto filed as Doc. # 20-1,). Said experts opined Plaintiff's disability is a substantial limitation of a major life activity and her disability requires certain accommodations, including but not limited to extra time and breaks, on all sections of the MCAT. *Id.*

Furthermore, said experts state that A.F.'s academic success and success outside of school have no bearing on her need for the "extra time" accommodation. *Id., Also See Opinions of the Office of United States Department of Justice, Civil Rights Division, Disability Rights Section ,Testing Accommodations*, 2014, https://archive.ada.gov/regs2014/testing_accommodations.html.

Although, Plaintiff produced overwhelming evidence of her disability and the need for the "extra time" accommodation, AAMC, in violation of the ADA has refused to provide the accommodation. Plaintiff has filed for a Temporary Restraining Order and/or Preliminary Injunction seeking this Court to find she has a disability under the ADA, which requires the accommodation of "extra time" on the MCAT. This motion, as well as evidence that will be presented at the hearing on June 2, 2023, will clearly establish Plaintiff is entitled to the relief sought.

**II.     Facts**

AAMC sets forth application guidelines and requirements for applicants who wish to request accommodation. *See* https://students-residents.aamc.org/mcat-exam-accommodations/application-guidelines-and-requirements. Under Section 3 of said guidelines,

AAMC provides to an evaluator what "information that is required to support" an applicant's request for accommodation for an applicant with Learning disabilities, ADHD and Psychiatric Disabilities. *See* https://students-residents.aamc.org/media/8461/download.

On January 14, 2023, Plaintiff provided information to support her request for accommodations, including the "extra time" accommodation as well as breaks. Plaintiff submitted two letters from a Physician's Assistant to Dr. Mina Bozak, and contrary to the assertion made by AAMC, said letters were reviewed and adopted by Dr. Bozak. (A.F. Decl. and Bugbee Decl.)

On March 1, 2023, a denial letter was sent to Plaintiff advising AAMC denied the request for "extra time", however it approved the accommodation of stop-the-clock breaks. (Bugbee Decl.) The denial letter advised that the documentation provided by Plaintiff was "not sufficient evidence, or data (based on objective assessment), to support the need for extra time. *Id.,* Ex. H, attached to AAMC's Opposition. The denial letter did not provide any specifics as to what AAMC required to support Plaintiff's need for extra time.

Plaintiff was assessed in January of 2023 by Dr. William Benninger, a psychologist who specializes in the diagnosis and treatment of ADHD.  Plaintiff requested a written report from Dr. Benninger to appeal the denial of the accommodation. (Benninger. Decl.)

The written report, as well as the testing conducted by Dr. Benninger, was in compliance with the requirements outlined by AAMC on its website. *Id.* Contrary to AAMC's assertion, any additional testing was not necessary to diagnose Plaintiff and support the extra time accommodation. *Id.* Dr. Benninger opined that based on his education, experience, examination of Plaintiff, and testing of Plaintiff, Plaintiff suffers from a disability, including but not limited to "severe working memory impairment that interferes with her ability to hold information in mind

3

for a significant enough period" and as a result she qualifies for the extra time accommodation. *Id.*

On March 31, 2023, AAMC denied the request for extra time, citing that Dr. Benninger did not perform comprehensive testing, Dr. Benninger's evaluation and report does not reflect that A.F. is substantially limited relative to most people, A.F. has had academic success, and A.F. has not previously been provided accommodation on other standardized tests. (A.F. Decl.)

After the denial, Plaintiff filed the instant matter. Since AAMC website or denial letters refused to provide any guidance as to what additional information it required to support the extra time accommodation, Plaintiff had Dr. Benninger prepare another report providing additional information to warrant the accommodation and refuting the opinions of the two independent professionals who reviewed the materials on behalf of AAMC, a letter from Dr. Kathleen Costlow, Plaintiff's pediatrician who diagnosed her with depression and anxiety and additional information from Plaintiff and her parents. (*Id.* and Costlow Decl.)

**III.    Law and Argument.**

    **A.    Plaintiff Has Shown and Will Show At The Hearing on June 2, 2023, She Has a Substantial Likelihood of Success On The Merits**

Defendant argues Plaintiff's Motion for a Temporary Restraining order and/or a Preliminary Injunction does not establish she has a substantial likelihood of success on the merits because the original motion did not (1) provide opinions from any expert, only their reports and (2) the documentation provided by Plaintiff did not establish her disability falls under the ADA and assuming it does her disability does not qualify her for the extra time accommodation. *See* Def. Opposition (Doc. #13, PageID # 15-17)

Plaintiff filed her Motion for a Temporary Restraining order and/or a Preliminary Injunction in Franklin County Common Pleas Court. As the practice in that court, before a

4

decision is made as to said motion, a hearing would have been held. There was no legal requirement and/or basis for Plaintiff to attach affidavits from experts and/or submit a 30-page motion to support its position. The purpose of the motion in Franklin County is to set forth the law and some facts to place on notice the court and the opposing party the request and secure a hearing date.

Regarding what is now before this Court, the declarations with supporting exhibits of Dr. Benninger and Dr. Costlow set forth their expert opinions that Plaintiff has a disability, i.e., which substantially limits one or more of major life activities. (Benninger Decl. and Costlow Decl.) Furthermore, Dr. Benninger has produced all documentation supporting his opinion and has stated with greater particularity for AAMC the medical reasoning why Plaintiff requires the extra time accommodation:

> "In the Working Memory dimension [AF] has severe problems when compared with the general population with the functional impairments including concentrating on tasks, forgetting what she's doing in the middle of things, sustaining her attention, forgetting instructions easily, remembering things even for a few minutes (such as what she reads) and doing more than one thing at a time. She also exhibits moderate impairment with jobs or tasks that have more than one step. Because test taking requires all of these specific executive function details, difficulty with these will seriously interfere with her ability to perform optimally in a testing situation."

*Id.*

The information produced by Plaintiff to support her disability and the need for accommodation is precisely what AAMC requires, according to its website. See https://students-residents.aamc.org/media/8461/download. However, it seems AAMC can ignore the applicant's own doctors' diagnosis and opinions, ignore the applicant's compliance with AAMC guidelines for requesting the accommodation, ignore the applicant is on medication for her disability, ignore the accommodation of extra time has formally been provided by the applicant's college and informal accommodations were provided to Plaintiff in high school and randomly deny the

5

request on the basis Plaintiff has had academic success, success on other standardized testing, success outside of academics and the opinion of experts hired by AAMC who never examined Plaintiff and whose opinions are not supported by what is before this Court.

### i. Plaintiff Is Disabled Under The ADA

Defendant concedes Plaintiff has one or more mental impairments. However, it asserts that Plaintiff's mental impairments do not substantially limit one or more major life activities as compared to most people in the general population, therefore she is not disabled within the meaning of the ADA. *See* Def. Opposition (Doc. #13, PageID # 18-24). However, Defendant's position is untenable.

To show a violation of the ADA based on AAMC's failure to accommodate, Plaintiff must show (1) she is disabled; (2) her requests for accommodation are reasonable; and (3) that those requests were denied. *Rawdin v. Am. Bd. of Pediatrics*, 985 F. Supp. 2d 636, 647-48 (E.D. Pa. 2013), aff'd, 582 F. App'x 114 (3d Cir. 2014). The failure to provide reasonable accommodations can constitute disability discrimination. *Peters v. Univ. of Cincinnati Coll. of Med.*, No. 1:10-cv-906, 2012 WL 3878601, at *8 (S.D. Ohio Sept. 6, 2012) (analyzing student's claim of disability under Title II of the ADA) (citing *Alexander v. Choate*, 469 U.S. 287, 295 (1985).

On January 1, 2009, the Americans with Disabilities Act Amendments Act ("ADAAA") amended the ADA to clarify the criteria for determining whether an individual qualifies as disabled. The ADAAA expands the definition of "major life activities" to include, but not be limited to, learning, reading, concentrating, thinking, communicating, and working. § 12102(2)(A)-(B). **"Reading is a major life activity under the existing precedent of this circuit and the amended ADA."** *Jenkins v. Nat'l Bd. of Med. Examiners*, No. 08-5371, 2009

WL 331638, at *2 (6th Cir. Feb. 11, 2009) (citing *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 626 (6th Cir. 2000); 42 U.S.C. § 12102(2)(A) (2006) (amended 2009)). The implementing regulations to the ADAAA also state that whether an impairment "substantially limits" a major life activity should not demand extensive analysis and requires an individualized assessment. 29 C.F.R. § 1630.2(j)(1)(iii)-(iv). *Berger v. Nat'l Bd. of Med. Examiners*, No. 1:19-cv-99, 2019 WL 4040576 (S.D. Ohio 2019).

In *Berger*, the Court set forth the Department of Justice ("DOJ") guidelines, 28 C.F.R. Part 36, Appx A, provide direction on what a court should consider when analyzing requests for test-taking accommodations under the ADA.

> As explained by the Eastern District of Pennsylvania: The DOJ heavily favors an individualized assessment or evidence that a "qualified professional has individually and personally evaluated the candidate as opposed to simply considering scores from a review of documents." **It also states that this need for an individualized evaluation is "particularly important in the learning disabilities context, where proper diagnosis requires face-to-face evaluation." and that "[r]eports from experts who have personal familiarity with the candidate should take precedence over those from, for example, reviewers for testing agencies, who have never personally met the candidate...."**

*Id.,* citing " Bibber v. Nat'l Bd. of Osteopathic Med. Exam'r, Inc., No. CV 15-4987, 2016 WL 1404157, at *6 (E.D. Pa. Apr. 11, 2016)

Defendant submits Plaintiff is not disabled under the ADA because (1) Dr. Benninger failed to address how Plaintiff is substantially limited in her ability to perform major life activities as compared to most people in the general public; (2) the diagnostic assessments administered by Dr. Benninger reflect average to above-average ranges; (3) Plaintiff has had academic success; (4) Plaintiff did not receive any prior accommodation on standardized testing; and (5) AAMC's experts have opined Plaintiff is not disabled under the ADA. *See* Def. Opposition (Doc. #13, PageID # 18-24)  However, the record before this Court refutes Defendant's position and clearly establishes that Plaintiff is disabled under the ADA.

7

First, Dr. Benninger performed the individual assessment/evaluation of Plaintiff and has a familiarity with Plaintiff. (Benninger Decl.) Based upon his education, experience, and his individual assessment of Plaintiff, Dr. Benninger has stated to a reasonable degree of medical certainty Plaintiff has significant functional difficulties associated with her ADHD symptoms, including Executive Function Impairments, which impair her ability to read and concentrate. Dr. Benninger performed all of the testing required to make his diagnosis and opine the need for the extra time accommodation. *Id.* Dr. Benninger's evaluation revealed significant impairment when it came to Plaintiff's "Comprehensive Score" and her ability to remember what she reads. Dr. Benninger stated:

> [AF] has severe problems **when compared with the general population with the functional impairments** including concentrating on tasks, forgetting what she's doing in the middle of things, sustaining her attention, forgetting instructions easily, remembering things even for a few minutes (such as what she reads) and doing more than one thing at a time.
>
> ****
>
> In the Plan/Organize dimension [AF] exhibits severe problems with getting overwhelmed by large tasks, prioritizing activities, and completing tasks. She exhibits moderate impairment with getting her ideas on paper. Because test taking requires all of these specific executive function details, difficulty with these will seriously interfere with her ability to perform optimally in a testing situation
>
> ****
>
> In contrast, her results on the Comprehension Score of the GORT-4 put her in the bottom 25% of achievement levels. For this test not only do you have to understand what you read (her ability in that area is in the top 30% as measured by the W-J) but you also have to remember what you read. Being in the bottom 25% certainly provides a significant disadvantage to her peers completing the MCAT. In order for her to be able to raise her ability to understand and remember what she reads (in order to accurately answer questions), she would have to reread much, much more than the individual taking this test without a working memory impairment. It has been indicated that an individual is allowed to reread the questions on the MCAT; however, this is exactly the point. Because an individual with this level of working memory impairment has to reread much more often than the other individuals taking this test it will take them considerably longer to complete the test and therefore the need for extended time.

8

> This individual has always had significant functional difficulties associated with her ADHD symptoms.

*Id.*

Dr. Benninger has opined that Plaintiff's disability substantially limits her ability to retain what she reads and concentrate as compared to most people in the general public. *Id.*

Plaintiff's pediatrician Dr. Costlow has diagnosed Plaintiff with depression and anxiety and has opined Plaintiff's anxiety, combined with the diagnosis of ADHD, can cause Plaintiff to be distracted from her current task, cause her to re-read questions, review her work, and as a result, require additional time for test taking. (Costlow Decl.) Costlow has opined to a reasonable degree of medical certainty A.F. must be provided the "extra time" accommodation due to her disability referenced above, and her disability substantially limits her ability to read, retain what she reads and concentrate as compared to most people in the general public. *Id.*

Adhering to the rationale in *Berger*, supra, these reports, and declarations from Plaintiff's experts who have examined her, evaluated her, administered testing, and have familiarity with her are compelling evidence of her disability under the ADA as opposed to two hired guns Defendant retained who only reviewed documentation produced by Plaintiff. Furthermore, Plaintiff's experts debunk Defendant's argument that Plaintiff disability is one that does not fall under the ADA. *Id.*

Finally, although Plaintiff has done well academically and has not received any accommodations on prior standardized testing, it does not support that she is not disabled under the ADA.[1] *Id.* and Benninger Decl. and *See Opinions of the Office of United States Department of Justice, Civil Rights Division, Disability Rights Section ,Testing Accommodations*, 2014, https://archive.ada.gov/regs2014/testing_accommodations.html.

---

[1] If Plaintiff had accommodations on her ACT/SAT one can make a reasonable inference she would have had higher scores.

9

In Berger, Berger filed suit against the National Board of Medical Examiners ("NBME") alleging, inter alia, violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. Berger alleged he was a person with a disability under the ADA and is entitled to extra testing time and other accommodations based upon a learning disability and ADHD. NBME denied that Mr. Berger was disabled within the meaning of the ADA or entitled to accommodations.

Berger submitted that he had impairments in reading fluency, processing speed, and ADHD, which substantially limited his major life activity of reading as compared to most people in the general population. This is identical to Plaintiff's impairments. Berger produced expert testimony similar to that produced by Plaintiff.

In support that Berger was not disabled within the meaning of the ADA, NBME put forth the same arguments put forth by Defendant. Specifically, Berger scored above average on standardized testing with no extra time or accommodations, The Court addressed this argument and set forth:

> Nevertheless, the Court also recognizes that "[a] definition of disability based on outcomes alone, particularly in the context of learning disabilities, would prevent a court from finding a disability in the case of any individual ... who is extremely bright and hardworking, and who uses alternative routes to achieve academic success." a result that would be inconsistent with the goals of the ADA.
>
> Id. at *18, citing Bartlett v. New York State Bd. of Law Examiners, No. 93 CIV. 4986, 2001 WL 930792, at *37 (S.D.N.Y. Aug. 15, 2001) (Sotomayor, J.). See also Peters, 2012 WL 3878601. at *6.

Furthermore, the Court went on to state;

> In addition, under the ADA regulations, the Court must consider the condition and manner under which the individual performs the major life activity, as well as the duration of time it takes to perform such activity, in determining whether a person has a disability under the ADA:

10

>[T]he focus is on how a major life activity is substantially limited, and not on what outcomes an individual can achieve. For example, someone with a learning disability may achieve a high level of academic success, but may nevertheless be substantially limited in the major life activity of learning because of the additional time or effort he or she must spend to read, write, or learn compared to most people in the general population.

*Id,* at *19 citing 29 C.F.R. § 1630.2(j)(4).

The Court found Berger's ADHD and learning disabilities fell within the meaning of the ADA.

Similar to Berger, Plaintiff was provided informal accommodations in high school that included extra time, retakes, and the ability to take a test at a different time. (A.F. Decl.) In college, Plaintiff received the formal accommodation of extra time accommodation. (A.F. Decl. and Bugbee Decl. Ex. E, Doc # 12-1)

The Department of Justice reiterated this position by stating that a history of academic success does not mean that a person does not have a disability that requires testing accommodations. *See Opinions of the Office of United States Department of Justice, Civil Rights Division, Disability Rights Section ,Testing Accommodations*, 2014, https://archive.ada.gov/regs2014/testing_accommodations.html.

Based upon the reports and opinions of Plaintiff's experts, Plaintiff's past history regarding formal and informal accommodations, and the applicable case law, Plaintiff has established that her ADHD and other disabilities fall within the meaning of the ADA.

### ii. Plaintiff Is Entitled to the Accommodation of Extra Time

Defendant's assertion that the accommodations it has already provided, specifically stop-the-clock breaks and a separate testing room, are sufficient borders on the absurd.

The MCAT exam has four sections: (1) Biological and Biochemical Foundations of Living Systems; (2) Chemical and Physical Foundations of Biological Systems; (3)

11

Psychological, Social, and Biological Foundations of Behavior; and (4) Critical Analysis and Reasoning Skills. AAMC websites states:

> The Critical Analysis and Reasoning Skills section tests how well test takers comprehend, analyze, and evaluate what they read, draw inferences from text, and apply arguments to new ideas and situations.

*See https://www.aamc.org/system/files/2022-06/2023%20MCAT%20Data%20Selection%20Guide%20Online.pdf.*

This is exactly the area whereby Dr. Benninger and Dr. Costlow have repeatedly set forth that due to Plaintiff's disability, she requires extra time for the MCAT. (Benninger Decl. and Costlow Decl.) The testing and evaluation conducted by Dr. Benninger have set forth Plaintiff has ADHD and working memory impairment. This disability limits her ability to understand and remember what she reads (in order to accurately answer questions). *Id.* This is what is tested on the MCAT, including under the section "Critical Analysis and Reasoning Skills".

Because Plaintiff has this level of working memory impairment, she has to reread much more often than the other individuals taking the MCAT. Therefore, it will take her considerably longer to complete the MCAT, and therefore the need for extended time. *Id.*

Finally, additional evidence supporting the need for the extra time accommodation is the prior accommodations that Plaintiff has had due to her disability. Plaintiff has been provided formal and informal accommodations, including extra time for testing previously. (A.F. Decl. and Bugbee Decl. Ex. E, Doc # 12-1)

Based upon the above, Plaintiff has established that she is entitled to the extra time accommodation based upon her disability.

      **iii.** **Plaintiff Will Suffer Irreparable Harm If The Extra Time Accommodation Is Not Provided**

In the context of preliminary injunctions sought in the area of higher education, irreparable injury may arise out of an interruption or suspension of higher education. *Sellers v. Univ. of Rio Grande*, 838 F. Supp. 2d 677 (S.D. Ohio 2012).

Contrary to the case law cited by Defendant, in *Sellers* the Court stated:

[t]here is some authority for the proposition that an interruption in an educational program is not, of itself, an irreparable injury. See, e.g. Baer v. National Bd. of Medical Examiners, 392 F.Supp.2d 42, 49 (D. Mass. 2005)(stating, in the context of a medical student's ADA claim, that "her inability to continue as a medical student without interruption at Drexel, while desirable, is not a harm that is irreparable to Baer's potential medical career"). **There is contrary case law, however, especially when the denial of an educational opportunity is coupled with other types of harm.**

First, Plaintiff cannot submit an application to medical school until she sits for the MCAT. (A.F. Decl.) It is common knowledge for individuals applying to medical school that the sooner you submit your applications, the better. That way, an applicant can take full advantage of the rolling admissions process and maximize his or her odds of getting into medical school. *Id.*

The American Medical College Application Service (AMCAS) is the AAMC's centralized medical school application processing service. The process for applying to medical school is as follows: The application opens on May 2, 2023. The earliest you can apply is May 30, 2023. After which, the AMCAS will verify your application and (assuming one applies in the first few days) will complete the verification process by June 30, 2023. In order to be verified by the AMCAS, one has to have an MCAT score available. After one is verified, the individual schools applied to will possibly send secondary applications. They will send these only after receiving an applicant's primary application from AMCAS, which occurs only after verification from the AMCAS. Again verification from AMCAS requires an MCAT score. After receiving an applicant's secondary application, most schools review them on a rolling basis, and the faster an applicant returns them, the earlier one is to be considered for interviews. Interviews are often

13

given on a rolling basis, and there are a limited number of spots for interviews. Therefore, the earlier AF applies, the better chance she has of getting accepted. This was discussed in several pre-med advising meetings, both individual and group, which Plaintiff had at Duke University. *Id.*

Defendant asserts Plaintiff's argument that it is "well known" that your chances of being admitted to medical school improve the earlier you apply is speculative and not supported by any evidence. However, Defendant's website supports Plaintiff's position.

As a result of the tedious process of applying to medical school, complying with the deadlines established by Defendant, and in order to maximize her odds of getting into medical school, the latest Plaintiff can take the MCAT is late June. *Id.* If she fails to take the MCAT with the extra time accommodation by the June date, she will suffer irreparable harm.

Second, Plaintiff would suffer other intangible injuries as a result of not being able to take the MCAT in June with the extra time accommodation. These would include additional psychological damage. Plaintiff already suffers from anxiety, depression, and ADHD. *(*Benninger Decl. and Costlow Decl.) Plaintiff is on medication for her disorders. (A.F. Decl.) The inability to take her MCAT with the extra time accommodation by June of 2023, which, as stated above, will delay her ability to apply to medical schools, delay her ability to complete medical school, and delay her entering her profession, will aggravate and likely make worse her anxiety and depression. (Costlow Decl.)

Third, without the extra time accommodation, Plaintiff will be at a severe disadvantage compared to other candidates because she will not have extra time as needed due to her disability. Her scores will be impacted, negatively affecting her chances of being accepted into a medical school or the medical school of her choosing. Defendant conducted a survey as to the

importance of MCAT scores to other criteria for admission officers. The survey revealed that MCAT scores along with grades, received the "Highest Importance Ratings". *See* https://www.aamc.org/system/files/2022-06/2023%20MCAT%20Data%20Selection%20Guide%20Online.pdf p. 15.

Furthermore, MCAT scores are used by educational institutions to predict performance in medical school and on license exams. *Id.* at p.38. Not allowing Plaintiff the extra time accommodation will negatively impact her score because of her disability. That will have a ripple effect on her ability to apply and be accepted into medical school because, as Defendant sets forth on its website, MCAT scores are used as a predictor on how well an applicant will perform in medical school and on license exams.

Based upon all of the above, it is without a doubt that Plaintiff will suffer irreparable harm if the extra time accommodation is not provided to her.

### iv. No Individual or Entity Will Suffer Substantial Harm

Defendant submits it will suffer harm as well as other applicant and medical schools if the accommodation is awarded. The premise of Defendant's argument is that Plaintiff does not suffer from a disability under the ADA, and if she does, her disability does not warrant accommodation. However, if this Court finds Plaintiff suffers from a disability as defined by the ADA and her disability warrants the accommodation, Defendant's argument must fail because if it does not, then anytime an applicant is provided an accommodation, under Defendant's theory, Defendant, all applicants, and all medical schools would suffer harm. Fortunately, common sense and case law reject such an argument.[2]

---

[2] If anytime an accommodation was provided to an applicant and that resulted in harm under Defendant's theory, then an applicant could never prevail when seeking injunctive relief.

### v. An Injunction Serves The Public Interest

Defendant asserts the same argument as it did regarding the "substantial harm" prong. However, said argument fails if this Court finds Plaintiff suffers from a disability as defined by the ADA and her disability warrants the accommodation. There is no doubt the public has a strong interest in seeing that one's disability is accommodated when taking standardized tests. Moreover, the public has an interest in protecting disabled individuals and evening out the playing field when it comes to standardized testing.  Accordingly, the public interest supports the Court's issuance of a temporary restraining order and injunction

## IV. Conclusion

Plaintiff respectfully requests that this Court enter a temporary restraining order and/or preliminary injunction precluding Defendant from not allowing the 50% extra time accommodation Plaintiff requires for the MCAT due to her disability.

Respectfully submitted,

*/s/ David A. Goldstein*
**DAVID A. GOLDSTEIN (0064461)**
DAVID A. GOLDSTEIN CO., L.P.A.
511 South High Street
Suite 200
Columbus, Ohio 43215
(614) 222-1889
(614) 222-1899 (Fax)
E-mail:  dgoldstein@dgoldsteinlaw.com
*Trial Attorney for Plaintiff A.F.*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document has been sent via Electronic Mail this 5th day of May 2023 to:

Erin D. French (0090813)
Vorys, Sater, Seymour, and Pease LLP
301 East Fourth Street, Suite 3500
Cincinnati, Ohio 45202
Phone: 513-723-4022
Email: edfrench@vorys.com

Robert A. Burgoyne
(*pro hac vice* application forthcoming)
Perkins Coie LLP
700 Thirteenth Street, N.W. Suite 800
Washington, D.C. 20005-3960
Phone: 202-654-1744
RBurgoyne@perkinscoie.com

Counsel for Defendant AAMC

>  */s/ David A. Goldstein*_____
>  **DAVID A. GOLDSTEIN (0064461)**