# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| A.F., | : |
| | : |
| Plaintiff, | : Case No. 2:23-cv-01241 |
| | : |
| v. | : Judge Edmund A. Sargus |
| | : |
| ASSOCIATION OF AMERICAN MEDICAL COLLEGES, | : Magistrate Judge Elizabeth Preston Deavers |
| | : |
| Defendant. | : |

## DEFENDANT ASSOCIATION OF AMERICAN MEDICAL COLLEGES' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

Erin D. French (0090813)
VORYS, SATER, SEYMOUR AND PEASE LLP
301 East Fourth Street, Suite 3500
Cincinnati, Ohio 45202
Phone: 513-723-4022
Email: edfrench@vorys.com

Robert A. Burgoyne (admitted *pro hac vice*)
PERKINS COIE LLP
700 Thirteenth Street, N.W. Suite 800
Washington, D.C.  20005-3960
Phone:  202-654-1744
Email: RBurgoyne@perkinscoie.com

Counsel for Association of American Medical Colleges

162421841.1

**PRELIMINARY STATEMENT**

By any measure, Plaintiff A.F. is an extraordinarily accomplished individual. She was virtually a straight-A student in high school and at Duke University.  She also scored in the top percentiles on every high-stakes standardized admission tests that she took in high school, ***without any accommodations***.  Nevertheless, she argues that the Court must find that she is disabled within the meaning of the ADA because her supporting professionals say that she is, and that the Court must unconditionally defer to "Dr. Benninger's and Dr. Costlow's opinions regarding the need for 50% extra time accommodation...." (Pl.'s Supp. Br., ECF No. 25 at PageID 351.)

Plaintiff is incorrect. She is not entitled to whatever accommodations she requests, simply because her supporting professionals say that she is disabled and "must" have 50% extra testing time.  Any finding to the contrary would distort the ADA, harming not only examinees who must take the MCAT under standard conditions but also the very population that the ADA is intended to protect—*i.e.*, individuals whose impairment substantially limit their ability to perform major life activities.  Moreover, such a finding could easily have a ripple effect, as precedent, beyond this case. A finding that Plaintiff is disabled within the meaning of the ADA and must be given her requested accommodations, on the record before the Court, would adversely affect other public and private testing entities, which, like AAMC, attempt to ensure that disabled individuals receive needed accommodations without compromising the fairness and integrity of their testing programs. *See Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 88-89 (2d Cir. 2004).

Plaintiff was diagnosed with anxiety by her pediatrician (Dr. Costlow) in 2017 and, a few months ago, with moderate ADHD by Dr. Benninger, a non-treating professional who she consulted in the context of seeking accommodations on the Medical College Admissions Test®

1

162421841.1

("MCAT").[1] She is a high-performing individual who strives to succeed, in an environment that is highly competitive. It is not surprising that she is anxious about taking the MCAT or that she would like to have more testing time. The same can be said for virtually all MCAT examinees. But she does not need and should not be awarded 50% more testing time than other examinees, on the heels of already being allowed to test with stop-the-clock breaks, in a separate room, and with 25% extra testing time.

Contrary to what Plaintiff asserts, AAMC has not "admitted [that] Plaintiff has a disability under the ADA" by approving certain accommodations. (Pl.'s Supp. Br., ECF No. 25 at PageID 350.) AAMC has instead approved accommodations that it was not legally required to approve, but which it chose to approve based on its broader policy of supporting inclusiveness in the medical profession and after giving considerable (but not dispositive) weight to the input of her supporting professionals. AAMC should not be discouraged from taking such an approach in the future by way of a preliminary injunction in this case that awards even more testing time to Plaintiff.[2]

The Court should deny Plaintiff's motion. First, there is no irreparable harm. AAMC's opening brief demonstrated that Plaintiff's claimed urgency did not exist—hence the postponement, at *Plaintiff's* suggestion, of the original hearing date on her motion. AAMC's opening brief also demonstrated that Plaintiff's alleged risk of irreparable harm—a delay in getting

---

[1] Dr. Benninger stated in one of his Declarations that when A.F. came to see him, he was "never advised" that she was there to get support for extra testing time on the MCAT, and that his "chart" does not reflect "that she presented to me to seek extra time for the MCAT." (Benninger Decl., ECF No. 19-2 at PageID 247, ¶ 4.) However, emails produced in discovery show that he first interacted with A.F. on January 19, 2023, and that knew by at least January 26th that A.F.'s purpose in coming to him was to get support for accommodations on the MCAT. (French Decl., ECF No. 26-3, Ex. A at PageID 420; *Id.*, Ex. F at PageID 435). They also show that he asked A.F. to tell him exactly what accommodations she wanted so that he could endorse those accommodations in his supporting documentation, as discussed *infra*.

[2] *Cf. Dabney v. Ohio Dept. of Admin. Servs.*, No. 2:04-CV-528, 2006 WL 745176, *9 (S.D. Ohio March 22, 2006) ("Courts should not discourage employers from providing accommodations that may be beyond the scope of ADA requirements.").

into medical school—is both speculative and insufficient to qualify as irreparable harm. (*See* AAMC Opp. to Pl.'s Mot., ECF No. 13 at PageID 227-30.) AAMC cited numerous cases which have held that a delay in getting into a university or graduate school does not constitute irreparable harm, including decisions by this Court. (*Id*.) Plaintiff largely ignores those cases and cites a single, inapt case to support her contrary position. (*See* Pl.'s Reply in Supp. of Mot., ECF No. 21 at PageID 317-20.) As AAMC argued in its opening brief, the absence of a risk of non-speculative and irreparable harm in itself compels denial of her motion.

Second, Plaintiff is not likely to succeed on the merits. While a significant amount of paper is now before the Court, Plaintiff's ADA claim should be rejected based upon a common-sense application of the governing legal standard to facts that, in relevant part, are largely undisputed. To be disabled under the ADA, a person must have a mental or physical impairment that ***substantially limits her ability to perform*** one or more major life activities, as compared to most people in the general population. Plaintiff claims to be substantially limited in "reading, writing, concentrating, learning, test-taking, working, and the bodily function of brain function." (Compl., ECF No. 3 at ¶ 27.) The evidence says otherwise.

Plaintiff provided very few documents in response to AAMC's discovery requests. The documents she provided, however, reinforce the conclusion that—regardless of any impairments that she claims to have or any functional limitations that she or her professionals say she experiences—she is not substantially limited in her ability to perform and does not need 50% more testing time than other test-takers in order to be able to take the MCAT in an "accessible place and manner." *See* 42 U.S.C. § 12189.

The threshold question before the Court is whether Plaintiff's alleged impairments result in functional impairments that substantially limit her ability to read, think and concentrate when taking a standardized test, as compared to the abilities of most people in the general population. In the absence of a diagnostic assessment of reading or concentrating under timed conditions, the most objective and reliable evidence on that point is how she has performed when taking other high-stakes standardized tests, because those tests required her to use the identical major life activities as to which she claims to be substantially limited. And that evidence, which Plaintiff and her supporting professionals say we must ignore, does not support a finding of substantial limitation. Nor does the assessment data relied upon by her supporting professional, Dr. Benninger.

Even if Plaintiff had presented clear and convincing evidence that she is substantially limited in her ability to read, think or concentrate as compared to most people in the general population,[3] she has not shown that she is likely to prevail on her ADA claim because she has not provided evidence that the accommodations approved by AAMC are unreasonable and will not allow her to test in an accessible manner.

Finally, the balance-of-harms factor does not weigh in her favor. Her requested injunction would harm not only AAMC but also other individuals who will be competing with Plaintiff for admission to the medical schools to which she applies.

## **PLAINTIFF'S ACADEMIC AND STANDARDIZED TESTING HISTORY**

To summarize, here is what the evidence now shows regarding Plaintiff's academic and standardized testing history and whether she needed accommodations to perform at that level:

- Plaintiff was virtually a straight-A student in high school and received numerous academic awards. She excelled eight AP courses as well as Honors Algebra, Honors Biology, Honors

---

[3] *See Roe v. Miami Univ., Office of Community Stds*., No 1:19-cv-136, 2019 WL 1439585, *3 (S.D. Ohio Apr. 1, 2019) ("[T]he party seeking the injunction must establish its case by clear and convincing evidence....").

- 4 -

   Chemistry, Honors U.S. History, Honors Physics, and Advanced Statistics. (Bugbee Decl., Ex. F, ECF No. 12-1 at PageID 116-18.)

- She achieved this academic success while also singing "in high school," playing "three varsity sports, lacrosse, basketball, and soccer," and participating in other extracurricular and volunteer activities. (French Decl., ECF No. 26-3, Ex. I at PageID 451, Interrog. Resp. No. 9; *see also* Bugbee Decl., ECF No. 12-1; A.F. LinkedIN, ECF No. 12-3; French Decl., ECF No. 26-3, Ex. B at PageID 422.)

- While she has said different things at different times on this point, it appears that she achieved this success with no formal academic accommodations and perhaps no accommodations at all.

- Without providing any supporting documentation, Plaintiff claims in one of her declarations that, "[b]ased on my disability, I have been provided formal and informal accommodations beginning in high school. In high school, I was provided extra time to take tests, the ability to retake tests, and the ability to test at a different time than what was regularly scheduled." (A.F. Decl., ECF No. 19-1 at PageID 242, ¶ 4.)[4]

- However, when she applied for MCAT accommodations, she was asked to describe her "history of receiving accommodations (elementary school, high school, college, previous standardized tests such as the ACT or SAT);" she was also instructed to "include verification of any accommodations received with your documentation." (*See* French Decl., ECF No. 26-3, Ex. C at PageID 424-25.) She made no mention of getting extra testing time in high school, as a formal or informal accommodation. Moreover, she provided no documentation from her school or any other source indicating that she had received ***any*** accommodations at any point in high school or earlier in her education. Instead, she said only that, "[a]s early as first grade I have been given accommodations that have helped with my struggle to read and absorb material as quickly as my peers. I saw a reading specialist daily throughout much of my formative years. During most of my college career at Duke University, I have been granted time and a half in controlled environment to take all my assessments." (*Id.* at PageID 25).

- Plaintiff was asked in an interrogatory to identify "all accommodations" that she had received from any "educational institution" that she has attended, and again she made no mention of getting extra testing time or other test-related accommodations in high school or any other point in her K-12 education. Instead, she responded as follows: "Duke University in 2021, whereby I was granted 1.5 extra time. At no time have been denied an

---

[4] Plaintiff appears to have come up with this new description of her high school accommodation history in order to argue that her facts are similar to the facts in *Berger v. Nat'l Bd. of Med. Exam'rs*, No. 1:19-cv-99, 2019 WL 4040576 (S.D. Ohio 2019). (*See* Pl.'s Reply in Supp. of Mot., ECF No. 21 at PageID 316 ("Similar to Berger, Plaintiff was provided informal accommodations in high school that included extra time, retakes, and the ability to take a test at a different time.")). AAMC has explained previously, however, why the facts of this case bear no resemblance to the facts in *Berger*. (*See* AAMC Opp. to Pl.'s Mot., ECF No. 13 at PageID 224.)

accommodation other than the request for extra time by Defendant." (French Decl., ECF No. 26-3, Ex. I at PageID 450, Interrog. Resp. No. 7.)

- In a letter to AAMC in April 2023, her Mother stated that she wished she had had Plaintiff diagnosed sooner because then Plaintiff "would have received the accommodation in high school and ... thus her grades ... would have been even better." (French Decl., ECF No. 26-3, Ex. G at PageID 439.) She made no mention of Plaintiff receiving any accommodations in high school and her quoted statement indicates that she did not receive accommodations. A.F.'s Mother does not reconcile her expectation that her daughter could perform "even better" with a high school record that already approaches perfection.

- Plaintiff attended Duke University, one of the most selective universities in the country.

- With no accommodations, she achieved straight A's both semesters of her first year at Duke; an A on a course she took in the Summer Term after her first year; and straight A's in the Fall Semester of her second year. (*See* Bugbee Decl., ECF No. 12-1 at PageID 120-21.)

- Despite her prior straight-A performance, Duke authorized Plaintiff to start received 50% extra time on classroom tests towards the end of her sophomore year. (Bugbee Decl., ECF No. 12-1 at PageID 113.)  AAMC did not know the reason for this approved accommodations when it filed its opening brief, but it has since learned that Duke approved this accommodation on the basis of a four-line letter from her pediatrician in April 2021:

    "My name is Kathleen Costlow and I am the primary care physician for [A.F.]. [A.F.] is currently under my care for anxiety and depression. Given the current circumstances with atypical academic environments, I'm recommending that [A.F.] have extended test taking time. I believe [A.F.] would greatly benefit from this for her to succeed in her academics." (Costlow Decl., ECF No. 20-1 at PageID 304.)

- Two weeks earlier, in a similarly abbreviated letter, Dr. Costlow had recommended to Duke that Plaintiff be given "a single room in a chosen area near her friends to help her succeed...." (*Id*. at PageID 303.)

- Plaintiff continued to achieve straight A's at Duke. (Bugbee Decl., ECF No. 12-1 at PageID 121-22.)

- As noted in AAMC's opening brief (AAMC Opp. to Pl.'s Mot., ECF No. 13 at PageID 215), Plaintiff achieved all this success at Duke—including the semesters when she received no accommodations—while also participating in numerous extracurricular and volunteer activities in which she did not request any accommodations. (French Decl., ECF No. 26-3, Ex. I at PageID 450, Interrog. Resp. No 6).[5] These extracurricular activities are relevant

---

[5]  While at Duke, Plaintiff wrote a compelling article about the challenges her sister has faced because she has ADHD. She noted in the article that her sister was diagnosed in preschool and had undergone "various ADHD treatments and interventions" while also receiving extensive assistance from her school and support from her parents. (French Decl., ECF No. 26-3, Ex. G at PageID 442-43.) Plaintiff did not suggest in the article that she also has ADHD or that she has faced challenges similar to those experienced by her sister. The article confirms that Plaintiff's parents were well aware of ADHD and its symptoms throughout

- 6 -

- here (as are her numerous high school extracurricular activities) because they further undermine the assertions by Plaintiff and her supporting professionals that Plaintiff is substantially limited in her ability to read, think, and stay organized, as compared to most people in the general population. (*See also* French Decl., ECF No. 26-3, Ex. B at PageID 422.)

- The issue here, of course, is whether Plaintiff needs extra testing time on the MCAT because of any functional limitations resulting from her impairments. The most logical place to begin in answering that question is to consider her experience when taking other high-stakes standardized tests. Indeed, it is precisely for that reason that the ADA regulations direct testing entities to "give[] considerable weight to documentation of past modifications, accommodations, or auxiliary aids ... received in similar testing situations" when considering requests for testing accommodations. *See* 28 C.F.R. § 36.309(b)(1)(v).

- Plaintiff took the ACT and SAT exams, each of which (like the MCAT) is a time-limited, standardized, multiple-choice examination.

- She took the ACT exam twice, as a Junior, and did extremely well both times, without extra testing time or any other accommodations. Her composite scores were in the 89th and 94th percentiles, meaning that she scored in the top 11% and 6% of the more than 1.9 million students who took the ACT exam in 2018. Her best scores were in the 99th percentile (English and Math). (*See* AAMC Opp. to Pl.'s Mot., ECF No. 13 at PageID 213.)

- Plaintiff did not provide her SAT scores to AAMC when she requested accommodations, but AAMC has obtained them in discovery. They disclose that she took the SAT twice in 2018 and did extremely well both times. (French Decl., ECF No. 26-3, Ex. D at PageID 428-31.) Her best total score was 1500, which included a Math score of 780 and a score on the Evidence-Based Reading and Writing component of 720. She took the SAT without accommodations.

- More than 2.1 million students took the SAT in 2018. *See* https://newsroom.collegeboard.org/more-2-million-students-class-2018-took-sat-highest-ever. Plaintiff's score of 1500 put her in the 98th percentile, meaning that she was in the top 2% of those 2.1 million students. *See* https://satsuite.collegeboard.org/media/pdf/sat-percentile-ranks-gender-race-ethnicity.pdf.

- Plaintiff also took nine AP exams in high school. AP exams are also time-limited, standardized exams, and again she tested without accommodations. Her score reports (obtained in discovery) show that she received the top possible score on four of those exams, including Macroeconomics, and received awards as an AP Scholar with Distinction in both 2018 and 2019. (French Decl., ECF No. 26-3, Ex. E at PageID 433.) Based on her excellent

---

Plaintiff's childhood because of her sister's experience. If they had seen any similar or "serve" symptoms in Plaintiff, it stands to reason they would have had her evaluated for ADHD well before Plaintiff was evaluated by Dr. Benninger in 2023 in the context of her requesting accommodations on the MCAT.

results, Duke University gave her college credit for six of the AP courses she took in high school. (Bugbee Decl., ECF No. 12-1 at PageID 120.)

## ARGUMENT

### I. Plaintiff Is Not Disabled Within the Meaning of the ADA.

Plaintiff's academic and standardized testing history shows that Plaintiff has achieved exceptional grades and standardized test scores without accommodations and while also devoting countless hours to a range of work, volunteer, and extra-curricular activities. The history is relevant because it shows that, even if her diagnoses are all warranted, and even if they cause some functional limitations, her impairments do not result in any substantial limitations when her abilities are compared (as they must be) to the abilities of most people in the general population.

In identical statements in their declarations, Drs. Benninger and Costlow have asserted that "A.F.'s academic success and success outside of school have no bearing on her need for the 'extra time' accommodation." (*See* Benninger Decl., ECF No. 19-2 at PageID 249, ¶ 14; Costlow Decl., ECF No. 20-1 at PageID 299, ¶ 9.) As a factual matter and as a matter of sound professional practice, that assertion makes no sense, as Dr. Harrison explains in her declaration, filed as an exhibit to this brief. (*See* Harrison Decl., ECF No. 26-1 at PageID 361, ¶ 11.) The statement is also contrary to the legal analysis routinely applied by courts. AAMC noted in its opening brief that numerous courts, in directly analogous cases, have held that individuals who perform at the level that Plaintiff has performed academically and on other standardized tests—with no extra testing time or other accommodations—are not substantially limited in their ability to read, think, and concentrate as compared to most people in the general population and thus are not disabled under the ADA. (*See* AAMC Opp. to Pl.'s Mot., ECF No. 13 at PageID 220-23 (citing, *inter alia*, *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 630 (6th Cir. 2000)).)

Plaintiff simply ignores the holdings in these cases, in both her reply brief (*see* Pl.'s Reply in Supp. of Mot., ECF No. 21 at PageID 311-16) and her supplemental brief (*see* Pl.'s Supp. Br., ECF No. 25 at PageID 349-50). Instead, she argues that, regardless of how Plaintiff has performed in real-world settings using the identical major life activities as to which she now claims to be substantially limited, the Court must defer to her two supporting professionals, Dr. Benninger and Dr. Costlow, on both the question whether she is disabled within the meaning of the ADA and her need for specific accommodations. The Court should reject that argument, which relies primarily upon non-binding, informal guidance from the U.S. Department of Justice while disregarding the many cases in which courts have **not** deferred to the conclusions or recommendations of an examinee's supporting healthcare professionals. (*See* Pl.'s Reply in Supp. of Mot., ECF No. 21 at PageID 307, 311-16 (cited as the "Opinions" of DOJ in Plaintiff's brief, *id*. at PageID 307, 314, 315; *see also* Pl.'s Supp. Br., ECF No. 25 at PageID 350.)

Nothing in the ADA or any of its implementing regulations requires testing entities to defer to the findings or recommendations of an examinee's supporting professional. As another court recently noted in rejecting the same argument, this Court's job would be "much easier" if that were the law. *Wright v. Nat'l Bd. of Med. Exam'rs,* 2021 WL 5028463, at *7 (D. Colo. 2021). But it is not the law, and for good reason. The supporting professionals relied upon by examinees are often advocates, and research has shown that they routinely recommend accommodations even when a diagnosis is unwarranted or when any functional limitations have not been shown to substantially limit an individual's ability to perform relevant major life activities. (*See* AAMC Opp. to Pl.'s Mot., ECF No. 13 at PageID 218-19; *cf. Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 832 (2003) (holding that, in the absence of a statutory directive, ERISA plan administrators are not required to accord special deference to a claimant's treating physician, as compared to experts

consulted by the plan, in determining whether the claimant has a disability, and noting that a claimant's professional will often be serving as an advocate).)

Here, Plaintiff asserts that "Dr. Benninger has personal familiarity with Plaintiff and has individually evaluated her," and that "the Court must give more weight to Dr. Benninger and Dr. Costlow's opinions regarding the need for 50% extra time accommodation" than it gives to the opinions of Dr. Bernier, Dr. Harrison, or Dr. Greenberg. (Pl.'s Supp. Br., ECF No. 25 at PageID 351.) Discovery has disclosed, however, that Dr. Benninger has no real "personal familiarity" with A.F. She went to him to get support for accommodations on the MCAT. He then evaluated her by way of a Zoom call lasting roughly two hours, not in person. (*See* French Decl., ECF No. 26-3, Ex. F at PageID 435.) Discovery has also disclosed that Dr. Benninger has recommended 50% extra testing time not because he has an objective basis for making such a recommendation, but because that is what A.F. told him she wants to get from AAMC. The communications between Dr. Benninger and A.F. proceeded as follows:

- Jan. 29, 2023 email from Dr. Benninger to A.F.: "If the submission for accommodations needs to be done in the next few days then it would be worth submitting what you already have to see what they say (if you are going to do this, email me very soon and indicate the accommodations you are requesting and I will add them to the end of the report and return it to you)." (French Decl., ECF No. 26-3, Ex. A at PageID 419.)

- Jan. 30, 2023 email from A.F. to Dr. Benninger: "Thank you for getting back to me. Could you please add the additional accommodations to the end of the current letter (1.5x on every section of the MCAT), since this is time sensitive? (*Id.*)

- Jan. 31, 2023 email from Dr. Benninger to A.F.: "[P]lease find attached the updated evaluation with the 1.5x request for additional time at the end. I added some additional narrative to support that request.... If you would like additional accommodation requests in that, let me know that as well." (*Id.* at PageID 418.)

Note, too, that Dr. Benninger's various declarations and reports fail to explain why Plaintiff needs 50% more testing time on the MCAT when she has taken all prior high-stakes standardized tests

with no extra testing time and done exceptionally well. Thus, there is no basis to afford any deference to Dr. Benninger's views on the issue of how much extra testing time A.F. should get.

As for Dr. Costlow, she has not recommended that A.F. needs 50% extra testing time, contrary to what Plaintiff suggests in her brief. Without directing the Court's attention to any documents or other information that would support her recommendation, her declaration simply asserts that "A.F. must be provided the 'extra time' accommodation due to her disability referenced above." (*See* Costlow Decl., ECF No. 20-1 at PageID 298-99; *see also id.* at PageID 302 (April 18, 2023 letter from Dr. Costlow, provided to AAMC in support of A.F.'s request for accommodations: "I highly recommend that she is granted the accommodation of extended time to take the MCAT.").)

There is likewise no basis for deferring to the views of Dr. Benninger or Dr. Costlow on the threshold question of whether A.F. is disabled within the meaning of the ADA and thus legally entitled to reasonable accommodations. AAMC noted in its opening brief that neither Plaintiff nor Dr. Benninger had addressed the ADA's substantial limitation standard. (*See* AAMC Opp. to Pl.'s Mot., ECF No. 13 at PageID 220-26.) In an effort to remedy that problem, Plaintiff offers only conclusory statements from Drs. Benninger and Costlow that parrot the ADA's language—*i.e.*, substantial limitation as compared to most people in the general population—without explaining how the required standard has been met, much less pointing to evidence that would support that conclusion. (*See* Benninger Decl., ECF No. 19-2 at PageID 248, ¶ 9 ("I can reasonably state to a degree of medical certainty A.F. has significant functional difficulties associated with her ADHD symptoms, including Executive Function impairments which impair her ability to remember what she read and concentrate. This disability substantially limits her ability to retain what she read and concentrate as compared to most people in the general public."); Costlow Decl., ECF No. 20-1 at

PageID 298, ¶ 6 ("I can reasonably state to a degree of medical certainty A.F. has significant functional difficulties associate with her anxiety which impairs her ability to read, concentrate, and answer questions.  This disability substantially limits her ability to read, retain what she reads and concentrate as compared to most people in the general public."); *see also* Harrison Decl., ECF No. 26-1 at PageID 361-62, ¶¶ 12-14.)

In contrast, in his report to AAMC and his declaration in this case, Dr. Bernier carefully walked through all of Dr. Benninger's testing results and explained why those results do not support a finding that A.F. is substantially limited in any major life activity relevant to taking the MCAT.  (*See* Bernier Decl., ECF No. 12-2 at PageID 169-181.)  Dr. Harrison also carefully addressed Dr. Benninger's report and recommendations in explaining in her report why the evidence that A.F. relied upon pre-lawsuit to support her request for accommodations does not support a finding that A.F. is substantially limited in any major life activities relevant to taking the MCAT, as compared to most people in the general population.  (*See* Bugbee Decl., ECF No. 12-1 at PageID 154-59.)  Dr. Harrison has since reviewed all of the additional documents that A.F. provided to AAMC after filing this lawsuit, in support of her further request for reconsideration.  Her opinions have not changed based upon any of that additional documentation, as she explains in the Declaration that is filed with this brief.  (*See* Harrison Decl., ECF No. 26-1 at PageID 362-63, ¶¶ 15-16.)

**II.     Even if Plaintiff Could Show that She is Disabled Under the ADA, She Has Not Shown that the Accommodations Approved by AAMC were Unreasonable.**

A person who is disabled under the ADA is not entitled to "the *best* accommodations or his *preferred* accommodations, but only to a reasonable accommodation." *Knox County, Tenn. v. M.Q.*, 62 F.4th 978, 1001 (6th Cir. 2023) (original emphasis).  In the context of an examination, reasonable accommodations should enable a disabled individual to test in an accessible place and

manner. The goal is to ensure that the individual tests on a level playing field with other examinees, not to ensure optimal testing conditions or to enable that individual to maximize her performance.

As noted by Plaintiff in her supplemental brief and supporting exhibits (ECF Nos. 24, 25), AAMC has now approved another accommodation—25% extra testing time—after receiving additional documentation from her post-lawsuit. The additional documents included letters from her Mother and Father, an additional personal statement from Plaintiff, additional materials from Dr. Benninger, and a supporting letter from Dr. Costlow. AAMC submitted that additional documentation and all of the documentation she had submitted previously to a new independent external professional, Dr. Mark Greenberg.

In addition to serving as an external reviewer of accommodation requests for various colleges and universities and for AAMC and other testing entities, Dr. Greenberg often evaluates and recommends accommodations for students and professional who are seeking accommodations. In this instance, although he thought it was a close question regarding whether any extra time was warranted, he recommended that AAMC approve 25% additional testing time, for reasons stated in his report to AAMC and as explained further in his declaration, which is filed with this brief. (*See* Greenberg Decl., ECF No. 26-2 at PageID 397, ¶ 16.) As indicated in Dr. Greenberg's declaration, there can be no real question at this point regarding the adequacy of the accommodations that AAMC has now approved, in terms of allowing Plaintiff to test in a manner that responds to her claimed impairments and resulting limitations. (*See* Greenberg Decl., ECF No. 26-2 at PageID 394-97, ¶¶ 10-17. *See also* Harrison Decl., ECF No. 26-1 at PageID 362-63, ¶ 16.)

AAMC has approved stop-the-clock breaks, a separate testing room, and (in response to A.F.'s most recent reconsideration request and new documentation) 25% extra testing time.

(Goldstein Decl., ECF No. 24 at PageID 328-37.) It is Plaintiff's burden to show that those accommodations would not enable her to take the MCAT in an accessible manner. She has offered only conclusory assertions in this regard, all of which are refuted by her history of excelling on other standardized tests with no accommodations whatsoever, and by the opinions of Drs. Bernier, Harrison, and Greenberg. For this additional reason, Plaintiff has not shown that she is likely to succeed on the merits of her claim, and her motion for interim injunctive relief should be denied. *Cf. Oser v. Capital Univ. Law School*, No. 2:09–cv–709, 2009 WL 2913919, *9 (S.D. Ohio 2009) (Marbley, J.) (denying preliminary injunction where plaintiff had been provided some additional testing time but not as much as his professional recommended: "Although Capital's accommodation differed from Dr. Krasa's proposal by providing only half of the extra exam time she recommended, Capital's decision to modify Dr. Krasa's recommendation was rational, geared towards preserving Capital's academic standards, and is an academic decision entitled to deference by this Court."); *In re Reasonable Testing Accommodations of LaFleur*, 722 N.W.2d 559 (S.D. 2006) (holding that the South Dakota Board of Bar Examiners did not violate the ADA by approving less extra testing time on the state bar exam than the examinee requested and his supporting professional recommended, where the Board's independent external reviewer recommended less extra time than requested).

### III. Plaintiff Has Not Shown a Risk of Irreparable Harm.

As noted in AAMC's opening brief, a delay in one's college or graduate school educational program does not constitute irreparable harm. *See, e.g., Doe v. Ohio State Univ.*, No. 2:15-cv-2830, 2016 WL 692547, *10-11 (S.D. Ohio 2016); *Pierre v. University of Dayton*, 143 F.Supp.3d 703, 714 (S.D. Ohio 2015); *Oser*, No. 2:09–cv–709, 2009 WL 2913919 at *11.

Plaintiff has also failed to show that her irreparable harm argument is not speculative. She posits that she must have 50% extra testing time in order to get admitted into medical school, but

she offers no supporting evidence. Indeed, in interrogatory responses dated April 28, 2023, she said that she does not know which medical schools that she intends to apply to. (French Decl., ECF No. 26-3, Ex. I at PageID 451, Interrog. Resp. No. 15.) There is every reason to believe she would get a very good MCAT score, even with no accommodations, just as she did on her college admissions tests, and she has already been granted significant testing accommodations. To suggest that she would not do well enough to get admitted to her desired medical schools if she tests without 50% extra testing time is entirely speculative, and speculative harm cannot support a preliminary injunction. *See Qui v. Univ. of Cincinnati*, No. 1:18-cv-634, 2018 WL 4496304, *8 (S.D. Ohio Sept. 19, 2018); (AAMC Opp. to Pl.'s Motion, ECF No. 13 at PageID 230-31) (citing numerous additional cases involving analogous facts).

## IV. An Injunction Would Harm Others.

Plaintiff continues to assert that there is no risk of harm to AAMC, medical schools, or other individuals seeking admission to medical school if the Court were to award her 50% extra testing time. (Pl.'s Reply in Supp. of Mot., ECF No. 21 at PageID 320.) She bases this argument, however, on the false premise that she is disabled within the meaning of the ADA and has shown that she is entitled to 50% extra testing time. More to the point, the relevant question is what others would be harmed if the preliminary injunction proved to be unwarranted. And the answer to that question is clearly yes.

Medical school admissions are highly competitive, with more applicants than available slots. Plaintiff wants to get as high an MCAT score as she can so that she can increase her chances of getting admitted to her preferred medical school. Providing her with more extra time than she needs, however, amounts to an unfair advantage that would necessarily come at the expense of other candidates seeking admission to that school and at the expense of a level playing field.

## **CONCLUSION**

For all these reasons, Plaintiff's motion should be denied.

Dated:  June 9, 2023                                          Respectfully submitted,


/s/   Erin D. French
Erin D. French (0090813)
Vorys, Sater, Seymour and Pease LLP
301 East Fourth Street, Suite 3500
Cincinnati, Ohio 45202
Phone: 513-723-4022
Email: edfrench@vorys.com

Robert A. Burgoyne (admitted *pro hac vice*)
Perkins Coie LLP
700 Thirteenth Street, N.W. Suite 600
Washington, D.C.  20005-3960
RBurgoyne@perkinscoie.com

Counsel for Defendant Association of
American Medical Colleges

- 17 -

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was electronically filed on June 9, 2023, via the Court's CM/ECF System, which will send notification of such filing to counsel of record for Plaintiff.

s/ *Erin D. French*
Erin D. French

Counsel for Defendant AAMC
